[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14902
Non-Argument Calendar

_____

D. C. Docket No. 06-02075-CV-LSC-S

MARCUS PRESLEY,

Petitioner-Appellant,

versus

RICHARD ALLEN,
Commissioner, Alabama Department of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 21, 2008)**

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Marcus Presley appeals the district court's denial of his petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 and arguing that the state violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and J.E.B. v. Alabama ex rel T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), during jury selection.  For the reasons discussed below, we affirm.

## I.

According to the record, Presley is a black male who was charged with murder by an Alabama state court when he was 16 years old and pled not guilty. During jury selection, 5, or 8%, of the 57 venire members were black (after challenges for cause).  Of its 23 peremptory challenges, the state used 4, or 17% of its challenges, to strike blacks.  In comparison, Presley used all 23 of his peremptory challenges to strike whites.  After these strikes, 1, or 8%, of the jurors were black.  Also, 59, or 67%, of the 87 venire members were female (before challenges for cause).  Of its 23 peremptory challenges, the state used 18, or 78% of its challenges, to strike females.  In comparison, Presley used 15, or 68%, of his peremptory challenges to strike males.  After these strikes, 9, or 75% of the jurors were female.

2

Approximately halfway through exercising these peremptory challenges, the state indicated that it wished to preserve a "reverse <u>Batson</u> motion," on the grounds that Presley had used most of his peremptory challenges to strike white males. Presley also indicated that he wished to preserve a <u>Batson</u> motion, on the grounds that the state had used most of its peremptory challenges to strike females. At the conclusion of jury selection, the state made a formal reverse <u>Batson</u> motion. Presley also made a formal <u>Batson</u> motion, arguing that the state had used its peremptory challenges to exclude blacks and females from the jury. In response to Presley's motion, the state explained:

> [T]he purpose of the State putting on the record the indication that the defendant was in – was violating Batson at that point is because the State is being forced into striking females because the defendant was excusing all the white males. If the State had excused any white males there would be no white males on this jury. . . . If we had struck even two strikes against white males there would be none on the jury, virtually none.

The state then asked the trial court judge if it should explain its choices. The trial court judge did not respond, but rather asked if the parties had further evidence supporting their motions. When they responded in the negative, the trial court judge denied both motions.

After a trial, the selected jury found Presley guilty of murder. He was

sentenced to life in prison without the possibility of parole.[1]

On direct appeal to an Alabama appellate court, Presley argued that the pattern of the state's challenges established a prima facie case of discriminatory striking. The Alabama appellate court affirmed his convictions and sentences. On appeal to the Alabama Supreme Court, Presley again raised this argument and added that the prosecutor's comments demonstrated an inappropriate concern with the jury's gender and race makeup. The Alabama Supreme Court also affirmed his convictions and sentences.

In its affirmance, the Alabama Supreme Court reasoned that "[s]tanding alone, given the factual circumstances of this case, the fact that the State struck four of [five blacks] from the venire and used some of its peremptory strikes to remove females from the venire [was] insufficient [to raise an inference of discriminatory striking]." The Alabama Supreme Court also reasoned that the prosecutor's comment that he had to strike females or else there would be no white males on the jury was not an explanation of the state's reasons and did not clearly indicate that gender was a factor in the state's choices. Rather, the comment simply may have been an explanation that the state only had females from which to

---

[1] Presley originally was sentenced to death, but an Alabama circuit court later vacated the death sentence pursuant to Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), because Presley was only 16 years old at the time of the crime.

choose for challenges.

Presley then filed the instant § 2254 petition, again raising his Batson and J.E.B. argument. The district court adopted and approved a magistrate judge's recommendation to deny the petition. The magistrate had found that the Alabama Supreme Court's conclusion that Presley failed to establish a prima facie case of discrimination neither was contrary to, nor involved an unreasonable application of, clearly established federal law. The magistrate had reasoned that no Supreme Court case held that a certain pattern of striking is sufficient to raise an inference of discrimination. The magistrate also had reasoned that the prosecutor's ambiguous statement indeed could be interpreted simply as an explanation that, with each of Presley's strikes of males, the venire became increasingly female and the state's choice of venire members to strike became more weighed toward females.

On Presley's motion for a certificate of appealability ("COA"), the district court granted a COA on the limited issue of

> Whether the determination by the Alabama Supreme Court in January 2000 that petitioner failed to establish a prima facie showing of racial and or gender discrimination under [Batson] and [J.E.B.] was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court, within the meaning of 28 U.S.C. § 2254(d).

Before us on appeal, Presley argues that, because the prosecutor explained the reasoning behind his peremptory challenges by way of his remarks, the

5

question of whether Presley established a prima facie case of discriminatory striking was moot. Presley also argues that, because these comments demonstrated a discriminatory motive, they, along with the pattern of the state's strikes, established a violation of Batson and J.E.B.. Presley further argues that, even if the comments and statistics did not establish a violation, they were sufficient to raise an inference of discrimination and, therefore, shifted the burden to the state to provide neutral reasons for the challenges.

## II.

Pursuant to § 2254,

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). Also pursuant to § 2254, the state court's determination of any "factual issue. . . shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by

6

clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under this standard, a state court decision is "contrary to" clearly established federal law "if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

A state court conducts an "unreasonable application" of clearly established federal law "if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or if it "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id. We have cautioned that "an 'unreasonable application' is an 'objectively unreasonable' application." Id. Indeed, the Supreme Court has instructed that the question is not whether the state "correctly" decided the issue, but whether its determination was "reasonable," even if incorrect. See Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).

As it applies to the § 2254 standard, "clearly established federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362,

7

412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  When no Supreme Court precedent is on point, a state court's conclusion cannot be "contrary to clearly established Federal law as determined by the U.S. Supreme Court."  Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

In Batson, the Supreme Court held that a defendant may challenge the state's use of its peremptory challenges when the state's strikes reveal a pattern of purposeful racial discrimination in the selection of the jury.  476 U.S. at 96, 106 S.Ct. at 1723.  In J.E.B., the Supreme Court extended this rule to purposeful discrimination on the basis of gender.  511 U.S. at 146, 114 S.Ct. at 1430.  The Supreme Court explained that "[a] person's race [or gender] simply is unrelated to his fitness as a juror."  See Batson, 476 U.S. at 87, 106 S.Ct. at 1718.

To prevail on a claim of race or gender discrimination, the defendant first must make a prima facie showing that the state has stricken venire members on the basis of race or gender.  Batson, 476 U.S. at 96, 106 S.Ct. at 1723; J.E.B., 511 U.S. at 144-45, 114 S.Ct. at 1429-30.  If the defendant makes such a prima facie showing, the burden shifts to the state to come forward with a neutral explanation for its choices.  Batson, 476 U.S. at 97, 106 S.Ct. at 1723.  If a race-neutral explanation is tendered, the trial court then must decide whether the defendant has proved purposeful racial discrimination.  Id.  The Supreme Court has held that if a

8

prosecutor offers a race-neutral explanation for the peremptory challenges and the trial court rules on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing is moot. Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).

To establish a prima facie case of discriminatory striking, the defendant only must produce evidence sufficient to "give rise to an inference of discriminatory purpose." Johnson v. California, 545 U.S. 162, 168, 125 S.Ct. 2410, 2416, 162 L.Ed.2d 129 (2005). The Supreme Court explained that,

> [i]n deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative.

Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723.

### III.

As an initial matter, the prosecutor's comment was not a means of offering race- and gender-neutral reasons for his challenges. Thus the Alabama Supreme Court was correct in requiring Presley to establish a prima facie case of discriminatory striking. See Hernandez, 500 U.S. at 359, 111 S.Ct. at 1866.

9

Immediately after making the comment, the state asked the trial court judge if it should explain its choices. The state would not have asked this of the trial court judge had it intended the comment as an explanation of its choices.

The question before us, then, is whether the Alabama Supreme Court's decision that Presley had not raised an inference of discrimination was contrary to, or based on an unreasonable application of, Supreme Court law as it existed in January 2000. See Williams, 529 U.S. at 412, 120 S.Ct. at 1523; 28 U.S.C. § 2254(d)(1). Two pieces of evidence shape this inquiry. The first is the state's pattern of strikes. The second is the prosecutor's comment at the summation of jury selection.

The Alabama Supreme Court's decision was not based on the wrong rule of law and did not differ from a Supreme Court holding based on similar facts. See Putman, 268 F.3d at 1241. Presley has not presented, and independent research does not reveal, a case in which the Supreme Court was faced with similar statistics or a similar comment from the challenging party as those presented here. Thus, because there is no Supreme Court precedent on point, an Alabama Supreme Court's conclusion that the state's pattern of strikes and the prosecutor's comment were insufficient is not contrary to clearly established federal law within the

10

meaning of § 2254.  See Washington, 324 F.3d at 1265.[2]

The Alabama Supreme Court also did not unreasonably apply Batson.  See Putman, 268 F.3d at 1241.  Although the statistics presented are suggestive of discrimination, in that the state struck all but one of the black members of the venire and used 78% of its strikes against females, the Alabama Supreme Court's determination that the statistics were not enough given the facts of this case was not objectively unreasonable.  See id.

Also, although the prosecutor's comment is perhaps more troubling, in that the prosecutor arguably admitted that race and gender were concerns of his in choosing whom to challenge, the Alabama Supreme Court's decision that the comment was not an admission of bias was not objectively unreasonable.  See id. Before he made the comment, the prosecutor had preserved a reverse Batson motion.  Although he made the comment in question after Presley raised his own Batson motion, the prosecutor referred back to his reverse Batson motion and explained that he wished to make such a motion because Presley was excluding white males from the jury.  Although the state went on to discuss the potential

_____

[2] Presley also argues on appeal that the Alabama State court effectively held that the pattern of the state's strikes could never alone raise an inference of discriminatory striking. Presley contends that the Alabama Supreme Court therefore contradicted the Supreme Court's suggestion in Batson to consider the statistics.  See Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723. However, the Alabama Supreme Court clearly stated that it found that the statistics alone were insufficient "given the factual circumstances of this case."

11

absence of white males on the jury, the Alabama Supreme Court's interpretation that this portion of the prosecutor's comment was merely an extension of his explanation for making a reverse Batson motion was not unreasonable.

While we may have reached a different result when faced with similar statistics and commentary, the "correctness" of the Alabama Supreme Court's decision is not at issue. See Bell, 535 U.S. at 694, 122 S.Ct. at 1850.

Therefore, because the Alabama Supreme Court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent, it did not err in finding that Presley failed to establish a prima facie case of discriminatory striking. See 28 U.S.C. § 2254(d)(1) and (2). Accordingly, we affirm the district court's denial of Presley's § 2254 petition.

**AFFIRMED.**