Filed 5/20/13  P. v. Bautista CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JUAN CARLOS De JESUS BAUTISTA,<br><br>     Defendant and Appellant. | C069652<br><br>(Super. Ct. No. LF11367A) |

A jury convicted defendant Juan Carlos De Jesus Bautista of premeditated and deliberate attempted murder (Pen. Code, §§ 664/187, subd. (a)) (unless otherwise stated section references that follow are to the Penal Code), two counts of assault with a firearm (§ 245, subd. (a)(2)), and actively participating in a criminal street gang (§ 186.22, subd. (a)).  The jury also found true allegations that the defendant personally and intentionally discharged a firearm causing great bodily injury (§§ 12022.53, subds. (c) & (d), 12022.5, subd. (a)), that defendant caused great bodily injury (§ 12022.7, subd. (a)), and that defendant committed the offenses for the benefit of, or in association with, a criminal street gang (§ 186.22, subd. (b)).

1

Following his conviction, defendant was sentenced to an indeterminate term of 40 years to life in prison, as well as additional sentences which the trial court stayed depending on the finality of other charges and enhancements. The trial court also imposed a $200 restitution fine with a 10 percent administrative surcharge fee, or $20.

Defendant appeals contending the trial court should have granted his *Batson/Wheeler* motion due to the prosecutor's alleged race-based exercise of a single peremptory juror challenge. (*Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69]; *People v. Wheeler* (1978) 22 Cal.3d 258.) Defendant also contends the trial court erroneously imposed the 10 percent surcharge on the $200 restitution fine. We conclude the trial court properly denied defendant's *Batson/Wheeler* motion and that the $20 administrative surcharge on the $200 restitution fine was proper. We therefore affirm the judgment. We grant the People's request to correct the abstract of judgment, which fails to reflect the sentence imposed and stayed for the gang enhancement on the attempted murder charge.

### FACTS AND PROCEEDINGS

Given the nature of defendant's claims on appeal, we dispense with a detailed recital of the underlying facts and instead focus on jury selection, specifically, the prosecutor's peremptory challenge of prospective juror P.S.

*Jury Questionnaire*

During the jury selection process, prospective jurors were given a 77-question questionnaire. In response to the jury questionnaire, P.S. stated she was employed by the California Department of Corrections and Rehabilitation as a hospice social worker and worked in the compassionate release advocacy program conducting medical parole workups. She also maintained a private therapy practice. She had lived in San Joaquin County for five years.

Question 18 asked whether she had any training in psychiatry, psychology or medicine. P.S. responded "yes," explaining she was a "Licensed Clinical Social Worker in Corrections," and that she was a "Certified Correctional Health Care Professional for medical treatment 'constitutional level of care' to inmate population."

In response to Question 35, which asked whether she could keep an open mind throughout the trial, P.S. responded she could and that "Every one [*sic*] deserves a fair trial for many reasons. Human error, justice is blind, constitutional rights, cost to public of possibility of having to reprocess or conviction of an innocent person."

Question 40 asked whether she believed it would be possible for "any witness to swear to tell the truth and yet lie under oath?" P.S. stated "yes," explaining that "they may (believe) what they have saw hear experienced or believe about their experience with the event they are recalling."

*Voir Dire*

P.S. confirmed during voir dire that she was a licensed clinical social worker for the Department of Corrections and that she worked with hospice patients and assisted with getting inmates out and situated under the compassionate release program. She also stated she had a small private therapy practice in town.

P.S. said she would not have a problem making her own decision, and when asked what she thought about the defendant being charged with attempted murder, use of a gun and gang activity, she responded she "need[ed] to see what the data is. I need to see the evidence," but that she was "okay" with the charges. She also stated a gang member might not cooperate with police for several reasons including loyalty and to protect themselves.

When asked how gangs fit into the current crime problem P.S. responded, "From the media and from what I understand, it's a large population of people that get involved

with gangs, get involved with crime. Bottom line." She also stated she would return a guilty verdict if she felt the prosecutor had met the reasonable doubt standard.

*Peremptory Challenge of P.S.*

The prosecution exercised its fourth peremptory challenge to excuse P.S. Defense counsel objected claiming the prosecutor had only dismissed P.S. based on her last name. The trial court found the defense had established a "prima facie case" of an inference of discriminatory purpose because P.S. had "a Hispanic last name," and asked the prosecution to explain the basis for the challenge.

The prosecutor stated he excused P.S. because (1) she was not a long-term resident of the county, (2) she was a Department of Corrections advocate and a licensed clinical social worker who dealt with constitutional level of care as noted in Question 18 on the jury questionnaire, and (3) based on certain other questionnaire responses, specifically Question 35 (that everyone deserves the right to fair trial due to possible human error and potential wrongful convictions), and Question 40 (that a person may swear to tell the truth but nevertheless lie under oath because they may actually believe an event occurred in a certain manner even though they are mistaken). Defense counsel responded that the prosecutor did not ask P.S. about any of those topics and that his concerns were "non issues." After considering the prosecutor's justifications and defense counsel's response, the trial court denied the *Batson/Wheeler* motion finding the prosecutor dismissed P.S. because of valid, race-neutral reasons.

DISCUSSION

I

*Batson/Wheeler Motion*

Both the federal and California Constitutions prohibit counsel from using peremptory challenges to exclude prospective jurors based on race. (*Batson, supra,* 476 U.S. at p. 97); *Wheeler, supra,* 22 Cal.3d at pp. 276-277.) "Doing so violates both the

4

equal protection clause of the United States Constitution and the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution." (*People v. Lenix* (2008) 44 Cal.4th 602, 612 (*Lenix*).)

When a defendant claims a prosecutor used a peremptory challenge to remove a prospective juror for racial reasons, courts engage in a three-part analysis. A defendant must first make a prima facie case by demonstrating that the facts give rise to an inference of discriminatory purpose. If that showing is made, the burden next shifts to the prosecution to explain its challenge on the basis of permissible, race-neutral justifications. If such an explanation is offered, the trial court then must decide whether the defendant has established purposeful racial discrimination. (*Johnson v. California* (2005) 545 U.S. 162, 168 [162 L.Ed.2d 129]; *Batson, supra,* 476 U.S. at pp. 93-94; *Wheeler, supra,* 22 Cal.3d at pp. 280-281; see also *People v. Thomas* (2011) 51 Cal.4th 449, 473 (*Thomas*).)

Because the trial court found the defendant established a prima facie inference of a discriminatory purpose and the prosecutor gave reasons for his peremptory challenge, we proceed directly to the second and third steps of the *Batson/Wheeler* analysis and determine whether the trial court erred in concluding the proffered reasons were nondiscriminatory. (See *People v. Zambrano* (2007) 41 Cal.4th 1082, 1106, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; see also *Thomas, supra,* 51 Cal.4th at p. 474.)

"A prosecutor asked to explain his conduct must provide a ' "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges.' [Citation.] 'The justification need not support a challenge for *cause*, and even a "trivial" reason, if genuine and neutral, will suffice.' [Citation.]" (*Lenix, supra,* 44 Cal.4th at p. 613.) A prospective juror may be excused for any number of reasons, including "facial expressions, gestures, hunches, and even for arbitrary or idiosyncratic reasons." (*Ibid.*)

5

" 'We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges " 'with great restraint.' " [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. [Citation.]" (*Lenix, supra,* 44 Cal.4th at pp. 613-614.) " 'The trial court's determination is a factual one, and as long as " ' "the trial court makes a 'sincere and reasoned effort' to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal" ' " when they are supported by substantial evidence. [Citation.]' [Citation.]" (*Thomas, supra,* 51 Cal.4th at p. 474.)

In essence, the issue is whether the trial court finds the prosecutor's explanation to be credible, based on factors such as the reasonableness of the explanation, the prosecutor's demeanor, and the trial court's own observations of the voir dire. (*Lenix, supra,* 44 Cal. 4th at p. 613.) Credibility can also be measured by " 'whether the proffered rationale has some basis in accepted trial strategy.' " (*Ibid.*)

According to defendant, the prosecutor improperly used a peremptory challenge to excuse P.S. because she had a Hispanic surname and the trial court erred in accepting the proffered nondiscriminatory reasons for this challenge. We find no error.

The record supports the trial court's conclusion that the prosecution dismissed P.S. for race-neutral factors. P.S. had an educational background in psychology and was a licensed clinical social worker. She also worked for the Department of Corrections as a hospice social worker in its compassionate release program for prison inmates. Excusing a prospective juror based on his or her professional background, especially in psychology or social work, does not run afoul of the *Batson/Wheeler* rules and has been acknowledged by other courts as an acceptable trial strategy. (See, e.g., *People v. Landry* (1996) 49 Cal.App.4th 785, 790-791 [prosecutor properly challenged potential juror based on psychology background]; see also *People v. Barber* (1988) 200 Cal.App.3d 378, 394 [juror excused because of profession based on prosecutor's belief that kindergarten

6

teachers are often liberal and not prosecution oriented]; *People v. Granillo* (1987) 197 Cal.App.3d 110, 120, fn. 2 [prosecutors often excuse professionals because they believe professionals are too demanding or look for certainty].) Indeed, in denying the *Batson/Wheeler* motion, the trial court noted that because P.S. was "involved in compassion release of inmates from prison and [was] a licensed clinical social worker . . . a prosecutor would be very concerned about how she could be much more sympathetic and make a decision based on emotion rather than on the facts or the law."

Moreover, P.S.'s responses to Questions 35 and 40 on the jury questionnaire supported the prosecutor's implicit concern that P.S. might be sympathetic to the defendant and less partial to the prosecution in this case. Her responses indicated that she believed people could be wrongfully convicted, and that although a person testifies under oath about an event or experience, ultimately he could be mistaken if his testimony is based on a sincere belief that the event occurred in a particular manner even though in reality it did not. In other words, a person's recollection of an event or experience, although genuinely believed, could be incorrect. As the prosecutor argued below, the defense's theory of the case, which it intended to and later did support with expert testimony, was that the defendant was not the shooter and the two eyewitnesses, although not necessarily lying, were simply mistaken in their observations or recollections. Thus, the prosecutor's implied concerns about P.S.'s potential sympathetic proclivities towards the defendant and his theory are amply justified by the record.

That the prosecutor did not specifically question P.S. on these topics is of little consequence. (*People v. Lewis* (2008) 43 Cal.4th 415, 476 [prosecutor's failure to question prospective juror on voir dire did not undermine trial court's conclusion that prosecutor's stated reasons for striking her based on her written questionnaire answers were not pretextual]; *People v. Clark* (2011) 52 Cal.4th 856, 906-907 [limited questioning of potential juror not significant where prosecutor reviewed jurors' questionnaire answers and was able to observe her responses and demeanor during court

7

and group voir dire]; *People v. Avila* (2006) 38 Cal.4th 491, 530 [prospective juror in capital case may be discharged for cause based solely on answers to written questionnaire].)  The import of her jury questionnaire responses, especially regarding convictions of innocent people based on mistaken but sincerely believed testimony--defendant's precise theory of the case--were clear.  This potential sympathy towards the defendant coupled with her profession as a licensed clinical social worker who worked for the compassionate release of prisoners provide substantial evidence to support the trial court's determination that the prosecutor struck P.S. based on valid, race-neutral reasons.  Thus, the trial court did not err in denying defendant's *Batson/Wheeler* motion.

## II

### *Restitution Fee Surcharge*

Defendant contends the 10 percent surcharge added to the $200 restitution fine imposed pursuant to section 1202.4 is unauthorized and must be stricken.

Section 1202.4, subdivision (a)(3)(A) provides, in relevant part, that a court "shall order" a defendant convicted of a crime to pay "[a] restitution fine in accordance with subdivision (b)" of that section.  Subdivision (b), in turn, provides "[i]n every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record."  (§ 1202.4, subd. (b).)  And subdivision (*l*) of section 1202.4 provides:  "At its discretion, the board of supervisors of a county may impose a fee to cover the actual administrative cost of collecting the restitution fine, not to exceed 10 percent of the amount ordered to be paid, to be added to the restitution fine and included in the order of the court, the proceeds of which shall be deposited in the general fund of the county."  (§ 1202.4, subd. (*l*).)

In this case, following defendant's conviction the trial court imposed a "restitution fine" of $200 pursuant to section 1202.4, subdivision (b).  The court also imposed a 10 percent "administrative surcharge" on the "restitution fine," which a minute order

8

characterizes as a "restitution fund collection fee." Thus, the trial court imposed the administrative fee to cover the cost of "collecting" the restitution fine. Based on the plain language of section 1202.4, subdivision (*l*), which specifically authorizes a 10 percent collection fee for any imposed restitution fine, the trial court correctly added the 10 percent administrative surcharge to the restitution fine imposed under subdivision (b). (*People v. Robertson* (2009) 174 Cal.App.4th 206, 210-211.)

III

*Abstract of Judgment*

An appellate court has the inherent power to correct clerical errors in an abstract of judgment that does not accurately reflect the oral judgments of sentencing courts. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) For the gang enhancement on the attempted murder charge, the trial court sentenced the defendant to life in prison with a minimum parole eligibility date of 15 years, which the trial court stayed pending finality of the judgment as to the sentence for 15 years to life on count one, the attempted murder charge. The abstract of judgment does not reflect the sentence on the gang enhancement allegation on count one, however. The People request that the court correct the abstract of judgment to reflect the judgment as announced. We will order the abstract corrected.

DISPOSITION

The judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment to reflect the term of 15 years to life on the count one gang enhancement as defined in section 186.22, subd. (b)(1), stayed pending finality of judgment as to the sentence on count one and to forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

                                                         HULL                    , J.



We concur:



          BLEASE          , Acting P. J.



          MAURO          , J.