Filed 7/18/13  P. v. Martinez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ENRIQUE TORRES MARTINEZ,<br><br>        Defendant and Appellant. | A134714<br><br>(San Mateo County<br> Super. Ct. No. SC072999A) |

This is an appeal from judgment after defendant Enrique Torres Martinez was convicted of two felony drunk driving offenses, one misdemeanor offense of failing to stop at the scene of an accident, and one misdemeanor offense of driving with a suspended license, with enhancements for certain prior felony violations.  The trial court sentenced defendant to a total prison term of six years.  Defendant challenges the judgment on the sole ground that the prosecutor violated his right to a fair and impartial jury by using peremptory challenges to strike four minority women from the jury panel, leaving the jury without Hispanic representation.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 9, 2011, an amended criminal information was filed charging defendant with:  (1) felony driving under the influence of alcohol (DUI) within ten years of two prior felony DUI violations (Veh. Code, §§ 23152, subd. (a), 23550.5, subd. (a)(1)) (count one);[1] (2) felony driving with a blood-alcohol level of 0.08 percent or greater

---

[1]        Unless otherwise stated, all statutory citations herein are to the Vehicle Code.

within ten years of two prior felony DUI violations (§§ 23152, subd. (b), 23550.5, subd. (a)(1)) (count two); (3) misdemeanor failing to stop at the scene of an accident (§ 20002, subd. (a)) (count three); and (4) misdemeanor driving with a driver's license suspended for a DUI conviction (§ 14601.2, subd. (a)) (count four).  The amended information alleged with respect to all counts that defendant had sustained four prior felony convictions for being under the influence of a controlled substance (Health and Safety Code, § 11350), and three prior felony DUI convictions (§ 23152).

The charges and allegations set forth above stemmed from events occurring on the evening of January 21, 2011, in Daly City.  Because the only issue raised on appeal relates to the circumstances of defendant's trial rather than of his underlying offenses, we describe the events of this evening only briefly to provide the relevant background to the trial.  Defendant, driving a blue-green Honda Civic, pulled in front of Enrique Tobar on San Pedro Avenue, cutting him off.  Tobar reacted by repeatedly blowing his horn.  After about two blocks, with Tobar's vehicle still following behind the Civic at a distance of about 10 to 15 feet, defendant slammed on his brakes.  Tobar, without time to brake, hit the Civic from behind, damaging his front-bumper.  Tobar pursued defendant's vehicle in an attempt to get the Civic's license plate number.  Defendant stopped, exited his vehicle, and walked to Tobar's vehicle.  Defendant complained Tobar had hit the Civic.  Tobar responded that he would call the police, at which point defendant returned swiftly to his vehicle and drove away.  Tobar then called 911 from his cell phone.  According to dispatch records, this call was placed at 9:45 p.m.

Tobar was subsequently able to provide the police with the Civic's license plate information, which was then used to trace the vehicle to Maria Gutierrez, defendant's girlfriend.  Police officers went to Gutierrez's residence around 10:00 p.m., where they found the slightly-damaged Civic and observed through a window defendant asleep on the living room couch with a near-full beer on a nearby table.  Defendant admitted he had been driving the Civic earlier in the evening, and that he had consumed three beers before leaving work at about 6:00 to 6:30 p.m.  He denied drinking more alcohol following the collision with Tobar's vehicle.  Nonetheless, defendant failed field sobriety tests and a

2

preliminary alcohol screening sample indicated his blood-alcohol level was 0.166 percent at 10:41 p.m.[2] The officers thus arrested defendant for driving under the influence of alcohol and admonished him to elect to take a mandatory blood or breath alcohol screening test. Defendant refused, and the officer ultimately decided he would take a blood test. A phlebotomist was summoned, who drew blood from defendant at 11:40 p.m., revealing a blood-alcohol level of 0.19 percent.[3]

At the time of defendant's arrest, his driver's license was already suspended for a previous drunk driving violation.

At trial, Gutierrez testified that, on the night in question, defendant arrived home between 9:00 and 9:30 p.m., after which she saw him drinking a beer in the living room with a box of beer nearby. She spent most of the night folding clothes in the bedroom so did not have much occasion to observe defendant drinking; however, the next day she found an empty shot glass smelling of tequila and several empty beer bottles.[4]

On May 16, 2011, a jury found defendant guilty of the misdemeanor offenses of failing to stop at the scene of the accident and driving with a suspended license, but could not reach a verdict with respect to the two felony drunk driving offenses, resulting in a mistrial.

On October 5, 2011, a second jury convicted defendant of both felony drunk driving offenses. The trial court then found true in bifurcated proceedings that defendant committed counts one and two within ten years of the alleged prior DUI convictions.

On December 22, 2011, following a hearing, the trial court denied defendant's request for probation and sentenced him to the upper three-year term as to count one; stayed imposition of a sentence as to count two; ordered him to serve 90 days in county

---

[2] The officers failed four times to get a second preliminary alcohol screening sample.

[3] At some point, another officer brought Tobar to Gutierrez's residence, where Tobar positively identified defendant as the driver of the Civic involved in the accident.

[4] A criminalist testified in rebuttal that, if a 240-pound male were to begin consuming alcohol at 9:45 p.m. and end by 10:04 p.m., he would have to consume 14 drinks to have a blood-alcohol level of 0.19 percent at 11:40 p.m.

3

jail as to counts three and four, with 90 days of custody credit for each count; and sentenced him to consecutive one-year terms as to each of the three prior felony conviction enhancements. An aggregate sentence of six years in prison was thus ordered. This timely appeal followed.

## DISCUSSION

Defendant raises a single issue for our review. He contends the prosecutor violated his constitutional rights to equal protection and to a trial by jury by using the People's peremptory challenges to exclude from the jury a cognizable group of minority women (to wit, one African-American and three apparently Hispanic women). The result, defendant contends, was a jury lacking Hispanic representation.[5]

The following well-established legal principles guide our review. "[U]se of peremptory challenges to strike prospective jurors on the basis of group bias — that is, bias against 'members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds' — violates the right of a criminal defendant to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution" and "the defendant's right to equal protection under the Fourteenth Amendment to the United States Constitution." (*People v. Avila* (2006) 38 Cal.4th 491, 541, citing *Batson v. Kentucky* (1986) 476 U.S. 79, 88 [*Batson*]; *People v. Wheeler* (1978) 22 Cal.3d 258, 276-277 ["remov[ing] prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution"] [*Wheeler*].)

When, as here, a defendant challenges the prosecution's use of peremptory strikes by way of a so-called *Wheeler/Batson* motion, he or she must comply with the following procedures. First, the defendant must "make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'

---

[5] According to defendant, while one woman remaining on the jury had a Hispanic surname, she appeared to be of Caucasian descent.

[Citation.]" (*People v. Williams* (2013) 56 Cal.4th 630, 649.) Second, if the defendant succeeds in making this prima facie case, "the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes. [Citations.] Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." ' (*Johnson v. California* (2005) 545 U.S. 162, 168 [162 L.Ed.2d 129, 125 S.Ct. 2410], fn. omitted.]" (*People v. Williams, supra,* 56 Cal.4th at p. 649; see also *People v. Johnson* (1989) 47 Cal.3d 1194, 1216.)

"The existence or nonexistence of purposeful racial discrimination is a question of fact." (*People v. Lewis* (2008) 43 Cal.4th 415, 469.) As such, on appeal, we must uphold the trial court's denial of a *Wheeler/Batson* motion "if the ruling is fairly supported by substantial evidence in the record, *giving deference to the trial court which had the opportunity to observe . . . the juror.*" (*People v. Holt* (1997) 15 Cal.4th 619, 651 (italics added); see also *People v. Williams, supra,* 56 Cal.4th at p. 649.) " 'We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses.' [Citation.] As long as the court 'makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal.' [Citation.]" (*People v. Williams, supra,* 56 Cal.4th at p. 650.)

Here, the trial court denied defendant's *Wheeler/Batson* motion for lack of a prima facie showing that the totality of the relevant facts gave rise to an inference of discriminatory purpose. The facts underlying the trial court's ruling are as follows.

The prosecution used its first four peremptory challenges to strike the following prospective jurors: (1) Ms. G., who defense counsel described as Hispanic, but the prosecutor described as Filipino; (2) Ms. B.H., an African-American; (3) Ms. L.E., who appeared Hispanic; and (4) Ms. H., who defense counsel described as Hispanic, but the trial court described as non-Hispanic and without any noticeable accent. After the prosecutor's fourth challenge, defense counsel brought a *Wheeler/Batson* motion on the ground that the prosecution had discriminated against a cognizable group during the jury

selection process with the result that a representative sample of Hispanic persons had been eliminated. The trial court thereafter permitted the prosecution to state for the record its reasons for striking the above-identified persons.

With respect to Ms. G., the prosecutor noted two reasons for her excusal. First, Ms. G. had her own pending court case that, like this case, related to alcohol. Second, Ms. G. had noted in voir dire that, as a general matter, she found the police disappointing and frustrating.

With respect to Ms. B.H., the prosecutor described her as an "over-thinker," and expressed concern that, if seated on the jury, she would get "caught up in the minutia of the case," potentially leading to another mistrial.

The prosecutor chose to strike Ms. L.E., in turn, due to her youthful and untraditional appearance, which included blue nail polish and very torn jeans, "along with the manner in which she responded to some of the questions posed to her." According to the prosecutor, she preferred a jury composed of individuals more conservative than Ms. L.E.

And, finally, with respect to Ms. H., the prosecutor exercised the peremptory challenge due to the prospective juror's "sullen" and "curt" responses and demeanor.

The trial court expressly accepted each of these explanations as indicative of the prosecutor's non-discriminatory motivation for excusing the identified prospective jurors. Subsequently, the trial court clarified to defense counsel that it did not find, as an initial matter, that a prima facie showing of discrimination had been presented. A jury composed of 11 Caucasians and one Filipino was thereafter impaneled.

Based upon the above record, we conclude substantial evidence supports the trial court's denial of defendant's *Wheeler/Batson* motion, even if we were to assume for the sake of argument that defendant made a prima facie showing. (*People v. Bonilla* (2007) 41 Cal.4th 313, 341-342.) First, the prosecutor's explanation for striking Ms. G. – that she, like defendant, had an alcohol-related case pending – is undoubtedly valid. It is a legitimate and non-discriminatory reason why the prosecution could in good faith question whether Ms. G. would be an impartial juror and, as such, is wholly proper.

6

(*People v. Williams, supra,* 56 Cal.4th at p. 649.) The same is true for the prosecutor's striking of Ms. L.E. due to her youthful and untraditional demeanor and appearance. It is a common and appropriate trial strategy for counsel to strive to have seated a conservative jury to alleviate concern that said jury would be too sympathetic towards the defendant or too mistrusting of law enforcement to render a fair verdict. (*People v. Lenix* (2008) 44 Cal.4th 602, 613 [prosecutor may excuse a prospective juror "based upon facial expressions, gestures, hunches, and even for arbitrary or idiosyncratic reasons," so long as such reasons are nondiscriminatory].)

Next, with respect to Ms. B.H., we agree with the trial court that striking this individual out of concern that she might "over-think" the case was a proper peremptory challenge. As our high court has explained: " 'All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory. "[A] 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection.' " (*People v. Reynoso* (2003) 31 Cal.4th 903, 924; see also *People v. Guerra* (2006) 37 Cal.4th 1067, 1101.) And, finally, we reach the same conclusion with respect to the prosecutor's explanation that Ms. H. was excused based upon her "sullen" and "curt" responses and demeanor. Whether or not reasonable, the prosecutor's rationale is nondiscriminatory. As such, the trial court, which, unlike this court had the opportunity to observe first-hand Ms. H's statements and expressions, was entitled to accept it. We decline to second-guess the trial court's judgment on this record. (*Ibid*.; *People v. Holt, supra,* 15 Cal.4th at p. 651 [reviewing court must give "*giv[e] deference to the trial court which had the opportunity to observe . . . the juror*"], italics added.)

Thus, because the prosecutor's stated reasons for excusing Ms. G., Ms. L.E., Ms. B.H. and Ms. H are reasonably grounded, not in purposeful discrimination, but rather in appropriate trial strategies relating to avoiding jurors who might decide a defendant's guilt based on sympathy, aversion to law enforcement, inability to reach a final decision, or some other improper ground, there is no basis to reverse the trial court's decision. (*People v. Lewis, supra*, 43 Cal.4th at p. 469 ["The credibility of a prosecutor's stated

7

reasons for exercising a peremptory challenge 'can be measured by, among other factors . . . how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy' "].)

Accordingly, because defendant has failed to provide any ground for reversing the trial court's denial of his *Wheeler/Batson* motion, we affirm.

## DISPOSITION

The judgment is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.