Justice Stevens
delivered the opinion of the Court.
The Supreme Court of California and the United States Court of Appeals for the Ninth Circuit have provided conflicting answers to the following question: “Whether to establish a prima facie case under Batson v. Kentucky, 476 U. S. 79 (1986), the objector must show that it is more likely than not that the other party’s peremptory challenges, if unexplained, were based on impermissible group bias?” Pet. for Cert. i. Because both of those courts regularly review the validity of convictions obtained in California criminal trials, respondent, the State of California, agreed to petitioner’s request that we grant certiorari and resolve the conflict. We agree with the Ninth Circuit that the question presented must be answered in the negative, and accordingly reverse the judgment of the California Supreme Court.
I
Petitioner Jay Shawn Johnson, a black male, was convicted in a California trial court of second-degree murder and assault on a white 19-month-old child, resulting in death. During jury selection, a number of prospective jurors were removed for cause until 43 eligible jurors remained, 3 of whom were black. The prosecutor used 3 of his 12 peremptory challenges to remove the black prospective jurors. The resulting jury, including alternates, was all white.
*165 After the prosecutor exercised the second of his three peremptory challenges against the prospective black jurors, defense counsel objected on the ground that the challenge was unconstitutionally based on race under both the California and United States Constitutions. People v. Johnson, 30 Cal. 4th 1302, 1307, 71 P. 3d 270, 272-273 (2003).[1] Defense counsel alleged that the prosecutor “had no apparent reason to challenge this prospective juror ‘other than [her] racial identity.’ ” Ibid, (alteration in original). The trial judge did not ask the prosecutor to explain the rationale for his strikes. Instead, the judge simply found that petitioner had failed to establish a prima facie case under the governing state precedent, People v. Wheeler, 22 Cal. 3d 258, 583 P. 2d 748 (1978), reasoning “ ‘that there’s not been shown a strong likelihood that the exercise of the peremptory challenges were based upon a group rather than an individual basis,’” 30 Cal. 4th, at 1307, 71 P. 3d, at 272 (emphasis added). The judge did, however, warn the prosecutor that “ ‘we are very close.’ ” People v. Johnson, 105 Cal. Rptr. 2d 727, 729 (Ct. App. 2001).
Defense counsel made an additional motion the next day when the prosecutor struck the final remaining prospective black juror. 30 Cal. 4th, at 1307, 71 P. 3d, at 272. Counsel argued that the prosecutor’s decision to challenge all of the prospective black jurors constituted a “systematic attempt to exclude African-Americans from the jury panel.” 105 Cal. Rptr. 2d, at 729. The trial judge still did not seek an explanation from the prosecutor. Instead, she explained that her own examination of the record had convinced her that the prosecutor’s strikes could be justified by race-neutral reasons. Specifically, the judge opined that the black venire members had offered equivocal or confused answers in their written questionnaires. 30 Cal. 4th, at 1307-1308, 71 P. 3d, at 272-273. Despite the fact that “ ‘the Court would not grant the challenges for cause, there were an *166 swers ... at least on the questionnaires themselves [such] that the Court felt that there was sufficient basis’ ” for the strikes. Id., at 1308, 71 P. 3d, at 273 (brackets added). Therefore, even considering that all of the prospective black jurors had been stricken from the pool, the judge determined that petitioner had failed to establish a prima facie case.
The California Court of Appeal set aside the conviction. People v. Johnson, 105 Cal. Rptr. 2d 727 (2001). Over the dissent of one judge, the majority ruled that the trial judge had erred by requiring petitioner to establish a “strong likelihood” that the peremptory strikes had been impermissibly based on race. Instead, the trial judge should have only required petitioner to proffer enough evidence to support an “inference” of discrimination.[2] The Court of Appeal’s holding relied on decisions of this Court, prior California case law, and the decision of the United States Court of Appeals for the Ninth Circuit in Wade v. Terhune, 202 F. 3d 1190 (2000). Applying the proper “reasonable inference” standard, the majority concluded that petitioner had produced sufficient evidence to support a prima facie case.
Respondent appealed, and the California Supreme Court reinstated petitioner’s conviction over the dissent of two justices. The court stressed that Batson v. Kentucky, 476 U. S. 79 (1986), left to state courts the task of establishing the standards used to evaluate the sufficiency of defendants’ prima facie cases. 30 Cal. 4th, at 1314, 71 P. 3d, at 277. The court then reviewed Batson, Wheeler, and those decisions’ progeny, and concluded that “Wheeler’s terms ‘strong likelihood’ and ‘reasonable inference’ state the same standard”— one that is entirely consistent with Batson. 30 Cal. 4th, at 1313, 71 P. 3d, at 277. A prima facie case under Batson es *167 tablishes a “ ‘legally mandatory, rebuttable presumption,’ ” it does not merely constitute “enough evidence to permit the inference” that discrimination has occurred. 30 Cal. 4th, at 1315, 71 P. 3d, at 278. Batson, the court held, “permits a court to require the objector to present, not merely ‘some evidence’ permitting the inference, but ‘strong evidence’ that makes discriminatory intent more likely than not if the challenges are not explained.” 30 Cal. 4th, at 1316, 71 P. 3d, at 278. The court opined that while this burden is “not onerous,” it remains “substantial.” Ibid., 71 P. 3d, at 279.
Applying that standard, the court acknowledged that the case involved the “highly relevant” circumstance that a black defendant was “charged with killing ‘his White girlfriend’s child,’ ” and that “it certainly looks suspicious that all three African-American prospective jurors were removed from the jury.” Id., at 1326, 71 P. 3d, at 286. Yet petitioner’s Batson showing, the court held, consisted “primarily of the statistical disparity of peremptory challenges between African-Americans and others.” 30 Cal. 4th, at 1327, 71 P. 3d, at 287. Although those statistics were indeed “troubling and, as the trial court stated, the question was close,” id., at 1328, 71 P. 3d, at 287, the court decided to defer to the trial judge’s “carefully considered ruling.” Ibid[3] We granted certio-rari, but dismissed the case for want of jurisdiction because the judgment was not yet final. Johnson v. California, 541 U. S. 428 (2004) (per curiam). After the California Court *168 of Appeal decided the remaining issues, we again granted certiorari. 543 U. S. 1042 (2005).
II
The issue in this case is narrow but important. It concerns the scope of the first of three steps this Court enumerated in Batson, which together guide trial courts’ constitutional review of peremptory strikes. Those three Batson steps should by now be familiar. First, the defendant must make out a prima facie case “by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.” 476 U. S., at 93-94 (citing Washington v. Davis, 426 U. S. 229, 239-242 (1976)).[4] Second, once the defendant has made out a prima facie case, the “burden, shifts to the State to explain adequately the racial exclusion” by offering permissible race-neutral justifications for the strikes. 476 U. S., at 94; see also Alexander v. Louisiana, 405 U. S. 625, 632 (1972). Third, “[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.” Purkett v. Elem, 514 U. S. 765, 767 (1995) (per curiam).
The question before us is whether Batson permits California to require at step one that “the objector must show that it is more likely than not the other party’s peremptory challenges, if unexplained, were based on impermissible group bias.” 30 Cal. 4th, at 1318, 71 P. 3d, at 280. Although we recognize that States do have flexibility in formulating appropriate procedures to comply with Batson, we conclude that California’s “more likely than not” standard is an inappropriate yardstick by which to measure the sufficiency of a prima facie case.
*169 We begin with Batson itself, which on its own terms provides no support for California’s rule. There, we held that a prima facie case of discrimination can be made out by offering a wide variety of evidence,[5] so long as the sum of the proffered facts gives “rise to an inference of discriminatory purpose.” 476 U. S., at 94. We explained:
“[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor’s exercise of peremptory challenges at the defendant’s trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant’s race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.’ Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.” Id., at 96 (quoting Avery v. Georgia, 345 U. S. 559, 562 (1953); citations omitted).
Indeed, Batson held that because the petitioner had timely objected to the prosecutor’s decision to strike “all black persons on the venire,” the trial court was in error when it *170 “flatly rejected the objection without requiring the prosecutor to give an explanation for his action.” 476 U. S., at 100. We did not hold that the petitioner had proved discrimination. Rather, we remanded the case for farther proceedings because the trial court failed to demand an explanation from the prosecutor — i. e., to proceed to Batson’s second step— despite the fact that the petitioner’s evidence supported an inference of discrimination. Ibid.
Thus, in describing the burden-shifting framework, we assumed in Batson that the trial judge would have the benefit of all relevant circumstances, including the prosecutor’s explanation, before deciding whether it was more likely than not that the challenge was improperly motivated. We. did not intend the first step to be so onerous that a defendant, would have to persuade the judge — on the basis of all the facts, some of which are impossible for the defendant to know with certainty — that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of Batson’s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.
Respondent, however, focuses on Batson’s ultimate sentence: “If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner’s conviction be reversed.” Ibid. For this to be true, respondent contends, a Batson claim must prove the ultimate facts by a preponderance of the evidence in the prima facie case; otherwise, the argument goes, a prosecutor’s failure to respond to a prima facie case would inexplicably entitle a defendant to judgment as a matter of law on the basis of nothing more than an inference that discrimination may have occurred. Brief for Respondent 13-18.
Respondent’s argument is misguided. Batson, of course, explicitly stated that the defendant ultimately carries the *171 “burden of persuasion” to “ 'prove the existence of purposeful discrimination.’ ” 476 U. S., at 93 (quoting Whitus v. Georgia, 385 U. S. 545, 550 (1967)). This burden of persuasion “rests with, and never shifts from, the opponent of the strike.” Purkett, 514 U. S., at 768. Thus, even if the State produces only a frivolous or utterly nonsensical justification for its strike, the case does not end — it merely proceeds to step three. Ibid.[6] The first two Batson steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant’s constitutional claim. “It is not until the third step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.” Purkett, 514 U. S., at 768.[7]
Batson’s purposes further support our conclusion. The constitutional interests Batson sought to vindicate are not *172 limited to the rights possessed by the defendant on trial, see 476 U. S., at 87, nor to those citizens who desire to participate “in the administration of the law, as jurors,” Strauder v. West Virginia, 100 U. S. 303, 308 (1880). Undoubtedly, the overriding interest in eradicating discrimination from our civic institutions suffers whenever an individual is excluded from making a significant contribution to governance on account of his race. Yet the “harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice.” Batson, 476 U. S., at 87; see also Smith v. Texas, 311 U. S. 128, 130 (1940) (“For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government” (footnote omitted)).
The Batson framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process. See 476 U. S., at 97-98, and n. 20. The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question. See Paulino v. Castro, 371 F. 3d 1083, 1090 (CA9 2004) (“[I]t does not matter that the prosecutor might have had good reasons ...[;] [w]hat matters is the real reason they were stricken” (emphasis deleted)); Holloway v. Horn, 355 F. 3d 707, 725 (CA3 2004) (speculation “does not aid our inquiry into the reasons the prosecutor actually harbored” for a peremptory strike). The three-step process thus simultaneously serves the public purposes Batson is designed to vindicate and encourages “prompt rulings on objections to peremptory challenges without substantial disruption of the *173 jury selection process.” Hernandez v. New York, 500 U. S. 352, 358-359 (1991) (opinion of Kennedy, J.).
The disagreements among the state-court judges who reviewed the record in this case illustrate the imprecision of relying on judicial speculation to resolve plausible claims of discrimination. In this case the inference of discrimination was sufficient to invoke a comment by the trial judge “that 'we are very close,’ ” and on review, the California Supreme Court acknowledged that “it certainly looks suspicious that all three African-American prospective jurors were removed from the jury.” 30 Cal. 4th, at 1307, 1326, 71 P. 3d, at 273, 286. Those inferences that discrimination may have occurred were sufficient to establish a prima facie case under Batson.
The facts of this case well illustrate that California’s “more likely than not” standard is at odds with the prima facie inquiry mandated by Batson. The judgment of the California Supreme Court is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

It is so ordered

 Petitioner’s state objection was made under People v. Wheeler, 22 Cal. 3d 258, 583 P. 2d 748 (1978).

 In reaching this holding, the Court of Appeal rejected the notion that a showing of a ‘“strong likelihood’” is equivalent to a “‘reasonable inference.’ ” To conclude so would “be as novel a proposition as the idea that ‘clear and convincing evidence’ has always meant a ‘preponderance of the evidence.’ ” 105 Cal. Rptr. 2d, at 733.

 In dissent, Justice Kennard argued that “[r]equiring a defendant to persuade the trial court of the prosecutor’s discriminatory purpose at the first Wheeler-Batson stage short-circuits the process, and provides inadequate protection for the defendant’s right to a fair trial....” 30 Cal. 4th, at 1333, 71 P. 3d, at 291. The proper standard for measuring a prima facie case under Batson is whether the defendant has identified actions by the prosecutor that, “if unexplained, permit a reasonable inference of an improper purpose or motive.” 30 Cal. 4th, at 1339, 71 P. 3d, at 294. Trial judges, Justice Kennard argued, should not speculate when it is not “apparent that the [neutral] explanation was the true reason for the challenge.” Id., at 1340, 71 P. 3d, at 295.

 An “inference” is generally understood to be a “conclusion reached by considering other facts and deducing a logical consequence from them.” Black’s Law Dictionary 781 (7th ed. 1999).

 In Batson, we spoke of the methods by which prima facie cases could be proved in permissive terms. A defendant may satisfy his prima facie burden, we said, “by relying solely on the facts concerning [the selection of the venire] in his case.” 476 U. S., at 95 (emphasis in original). We declined to require proof of a pattern or practice because “‘[a] single invidiously discriminatory governmental act’ is not ‘immunized by the absence of such discrimination in the making of other comparable decisions.’” Ibid, (quoting Arlington Heights v. Metropolitan Housing Development Corp., 429 U. S. 252, 266, n. 14 (1977)).

 In the unlikely hypothetical in which the prosecutor declines to respond to a trial judge’s inquiry regarding his justification for making a strike, the evidence before the judge would consist not only of the original facts from which the prima facie case was established, but also the prosecutor's refusal to justify his strike in light of the court's request. Such a refusal would provide additional support for the inference of discrimination raised by a defendant’s prima facie case. Cf. United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U. S. 103, 111 (1927).

 This explanation comports with our interpretation of the burden-shifting framework in eases arising under Title VII of the Civil Rights Act of 1964. See, e. g., Furnco Constr. Corp. v. Waters, 438 U. S. 567, 577 (1978) (noting that the McDonnell Douglas Corp. v. Green, 411 U. S. 792 (1973), framework “is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination”); see also St. Mary’s Honor Center v. Hicks, 509 U. S. 502, 509-510, and n. 3 (1993) (holding that determinations at steps one and two of the McDonnell Douglas framework “can involve no credibility assessment” because “the burden-of-production determination necessarily precedes the credibility-assessment stage,” and that the burden-shifting framework triggered by a defendant’s prima face case is essentially just "a means of ‘arranging the presentation of evidence’ ” (quoting Watson v. Fort Worth Bank & Trust, 487 U. S. 977, 986 (1988))).