# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 16-230


**STATE OF LOUISIANA**

**VERSUS**

**LARRY BROUSSARD, JR.**
**AKA LARRY JAMES BROUSSARD, JR.**
**AKA LARRY J. BROUSSARD, JR.**



**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 56662
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## BILLY HOWARD EZELL
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


**REVERSED; SENTENCE VACATED; AND REMANDED.**


**Pickett, J., dissents and assigns written reasons.**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Larry Broussard, Jr.**

**Keith A. Stutes**
**District Attorney**
**Lafayette Parish**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**J. N. Prather, Jr.**
**Assistant District Attorney**
**100 N. State St. Suite 215**
**Abbeville, LA 70510**
**(337) 898-4320**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**EZELL, Judge.**

On August 16, 2013, Defendant, Larry Broussard, Jr., was charged by a bill of information with one count of aggravated flight from an officer, a violation of La.R.S. 14:108.1, and one count of possession of drug paraphernalia, a violation of La.R.S. 40:1023. A jury trial commenced on August 4, 2015. On August 5, 2015, the jury found Defendant guilty of aggravated flight from an officer.[1] Defendant was sentenced on December 17, 2015, to two years at hard labor, with the sentence to run consecutively with the sentence imposed in the trial court's docket number 58163.[2]

Defendant has perfected a timely appeal, wherein he alleges two assignments of error: 1) The trial court erred when it denied Defendant's *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712 (1986), challenge to the State's peremptory strike of a juror; and 2) The trial court erred when it permitted other crimes evidence to be submitted to the jury. For the following reasons, we find merit with Defendant's assignment of error number one. Accordingly, the conviction must be reversed, the sentence vacated, and the matter remanded to the trial court. Thus, the remaining assignment of error is moot.

## FACTS

After committing a traffic violation, Defendant failed to respond to police officers' direction to pull his vehicle over. Instead, Defendant fled at a high rate of

---

[1]At some time prior to trial, the offense of illegal possession of drug paraphernalia was severed.

[2]Defendant was convicted on October 15, 2015, of failure to register as a sex offender, second offense, a violation of La.R.S. 15:542.1.4, under the trial court's docket number 58163. The trial court imposed sentences in both cases on December 17, 2015. Defendant has filed an appeal concerning the sex-offender conviction and the resulting sentence under this court's docket number 16-231.

speed, failed to stop at stop signs, ran cars off the roadway, and swerved across the highway; thus, he endangered other drivers and pedestrians.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant, a black male, argues that his equal protection rights were violated when the trial court denied his *Batson* challenge. He asserts that the State used a peremptory strike to exclude a black juror based solely on race. Defendant did not question the peremptory exclusion of the first potential black juror but objected to and challenged the State when it used a peremptory challenge to back strike Sandra Simon from the jury after she had already been accepted as a juror.

The supreme court discussed *Batson* challenges in *State v. Nelson,* 10-1724, 10-1726, pp. 7-9 (La. 3/13/12), 85 So.3d 21, 27-29 (footnote omitted), as follows:

> In *Batson*, the United States Supreme Court held that the use of peremptory challenges to exclude persons from a jury based on their race violates the Equal Protection Clause. *Batson,* 476 U.S. at 96-98, 106 S.Ct. 1712. The holding in *Batson* was initially adopted by this Court in *State v. Collier*, 553 So.2d 815 (La.1989), and has been codified by the legislature in Louisiana Code of Criminal Procedure article 795(C) and (D). . . .
>
> The Court in *Batson* outlined a three-step test for determining whether a peremptory challenge was based on race. Under *Batson* and its progeny, the opponent of a peremptory strike must first establish a prima facie case of purposeful discrimination. Second, if a prima facie showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. Third, the trial court then must determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination. *Batson,* 476 U.S. at 94-98, 106 S.Ct. 1712. *See also, Johnson v. California*, 545

2

U.S. 162, 168, 125 S.Ct. 2410, 2416, 162 L.Ed.2d 129 (2005); *State v. Sparks*, 1988-0017 (La.5/11/11), 68 So.3d 435, 468; *State v. Givens*, 99-3518 (La.1/17/01), 776 So.2d 443, 448.

The supreme court then outlined how the objecting party established a prima facie showing of a *Batson* violation:

> (1) the striking party's challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the peremptory was used to strike the venireperson on account of his being a member of that cognizable group. *Batson,* 476 U.S. at 96, 106 S.Ct. 1712; *Sparks*, 68 So.3d at 468; *Givens*, 776 So.2d at 449. If the trial court determines the opponent failed to establish the threshold requirement of a prima facie case (step one), then the analysis is at an end and the burden never shifts to the proponent of the strike to articulate neutral reasons (step two). *Sparks*, 68 So.3d at 468-89; *State v. Duncan,* 1999-2615 (La.10/16/01), 802 So.2d 533, 544.

*Id.* at 29.

Ms. Simon was among the first twenty-one members of the jury pool called at random for voir dire. During the trial court's voir dire, Ms. Simon introduced herself. She stated she was from Erath, she was single, and she was a housekeeper. Also, when the trial court asked if any of the potential jurors knew any of the parties in the case, Ms. Charmaine Scott, a black woman, told the trial court that she knew Defendant from high school.

Following the trial court's questioning, the State conducted its voir dire. In response to the State's question if anyone in the jury pool had a friend or family member in prison, Ms. Scott stated that her brother had been incarcerated for three years for theft and that her boyfriend, whom she had been living with for fifteen years, had spent three and a half years in prison for drugs. He was currently on parole. The trial court asked her if she could put the fact of her brother's and her boyfriend's incarceration aside and be fair and impartial in the current case, to which she responded that she could.

The State then asked each potential juror if it proved all the elements of the offense of aggravated flight from an officer, could they find Defendant guilty. When the State came to Ms. Simon, the following exchange took place:

MR. PRATHER: Ms. Simon? Is it Simon or Simon?

MS. SIMON (NUMBER 127): Simon.

MR. PRATHER: Simon.

MS. SIMON (NUMBER 127): Yes, sir.

MR. PRATHER: You could.

MS. SIMON (NUMBER 127): (Nods head affirmatively).

MR. PRATHER: You have what, two kids?

MS. SIMON (NUMBER 127): No.

MR. PRATHER: How many kids? No kids?

MS. SIMON (NUMBER 127): Yes.

MR. PRATHER: Okay. That's right. You're single, housekeeper; good, working hard.

MS. SIMON (NUMBER 127): Some.

MR. PRATHER: A lot of work. Everybody works hard.

Later, defense counsel asked each of the potential jurors if there remained doubt as to Defendant's guilt but Defendant did not testify, could they vote not guilty?  Ms. Simon indicated that she could.

Following voir dire of the first group of potential jurors, the State and defense indicated their choices for jurors.  At this time, the trial court indicated it would allow back strikes.  The State and the defense accepted Ms. Simon as a juror.  The next person considered was Ms. Scott.  The State challenged Ms. Scott for cause, pointing out that she had known Defendant during high school and that her brother and boyfriend had been incarcerated.  The trial court denied the challenge stating that Ms. Scott had been rehabilitated.  The State then exercised its first peremptory challenge to exclude Ms. Scott.

The second round of randomly selected names, thirteen in all, were pulled from the jury pool for voir dire.  At one point, while discussing whether the potential jurors could vote guilty if the State proved all the elements of the offense, the State addressed Ms. Simon, who was sitting in the courtroom, and asked:

> MR. PRATHER: I know you're sitting by Mr. Mire and I know I had talked to you earlier.  You're still okay? If I prove everything, you can find that defendant guilty as charged of that crime?

> MS. SIMON (NUMBER 127): Yes, sir.

After twelve jurors were selected, the State chose to back strike Ms. Simon from the jury.  The entire argument regarding defense counsel's *Batson* challenge consisted of the following:

> MS. DE MAHY:  Do you want me to make a challenge and backstrike now or later?  Never mind. Go ahead. I may have challenged - - it's late in the day. I'm sorry.

5

YOUR HONOR:  Are you talking about a Batson challenge?

MS. DE MAHY:  Uh-huh (yes).

YOUR HONOR:  That's up to you, whenever you want to - - I think it needs to be raised.  I mean, you can raise it now, if you want to raise it.  Go ahead.

MS. DE MAHY:  I'm going to make a Batson challenge on Ms. Simon.  Right now, we had no other reasons or challenges prior.  Nothing was mentioned.  At this time, it seems like she's one of two potential black jurors.  So I think you would have to show some reason, other than - -

MR. PRATHER:  The burden of proof's on them. I don't think she's sufficiently alleged any burden of proof whatsoever, since there's another black on the jury.

YOUR HONOR:  I think the State has to give a reason for the strike on Ms. Simon.  It does not have to be a reason that rises to the level of cause, but it has to be for something.  You can't just strike her simply because - - because, because.

MR. PRATHER:  On a peremptory challenge, I can.  But - -

YOUR HONOR:  You can go pull the law and cite that to me, but I don't think so.

MR. PRATHER:  I don't think she's - - are you saying she's met her burden of proof on a Batson challenge?

YOUR HONOR: I'm asking you to give a reason.

MR. PRATHER: The reason is that she does not appear to be as intelligent as I would like to see on a juror.  She is a housekeeper.  The Court did not and I did not and counsel did not ask for their education, which I should have.  But just watching how she reacts and to the questions being asked, that's my reason. I question whether she can follow the case.

YOUR HONOR:  Do you have a response to that?

MS. DE MAHY:  I mean, that's his personal opinion. I don't think the fact that she's a housekeeper and - - that's his personal feeling.  I don't necessarily agree with it.  I think she was fully aware, when we asked her questions and even talked to her about - - I think he asked her something about - - he had forgotten that she hadn't had children and she was pretty responsive and quick to respond to that question.  So I'm - -

MR. PRATHER:  She – I'm sorry. Go ahead.

MS. DE MAHY: I'm not necessarily - - I don't know if you're asking me to agree with his scenario.  I just don't - -

YOUR HONOR:  No.  I'm just curious, because I've never heard that response when there's been absolutely nothing presented to the Court to suggest that she's unintelligent in any way or has the inability to follow the law.

MR. PRATHER:  I've been watching what I was about to say.  I didn't want to interrupt.  She's had her head down the entirety of the last session.  That's why I specifically asked her questions pertaining to Mr. Mire, who is seated next to her.  You know, I question whether she's paying attention.  And you know, call it what you wish, but I don't care for her on the jury.

YOUR HONOR:  I don't think that's - -

MR. PRATHER: It's a neutral issue.  It has nothing to do with race.  And I still question whether she's even met her burden, under Batson - -

YOUR HONOR:  We got through that part.  I asked you to state your reason.

MR. PRATHER:  And I did.  And it's a race-neutral issue.

YOUR HONOR:  I don't find - - this is the first time African - - this is the first African American member of the jury that you strike?

MR. PRATHER:  Yes.

YOUR HONOR:  All right.

MS. DE MAHY:  We've only had two on the whole, entire - - oh, no, three.  I'm sorry.

MR. PRATHER:  No. There's been three and maybe - -

MS. DE MAHY:  We had three - -

YOUR HONOR:  Three, based on physical characteristics.

MS. DE MAHY:  And if I remember correctly - - actually, Ms. Scott was a State challenge. So out of our three, she was challenged on the first go-round.  That was your first challenge.  And he had

7

mentioned the brother - - he tried to challenge for cause. That was denied. And you challenged her, peremptory.

MR. PRATHER: Yes. The boyfriend was on parole - - the boyfriend and the brother. And the Court had questioned her and I questioned her and you questioned her.

YOUR HONOR: All right. I'm going to deny the Batson challenge on that.

In brief, the State primarily argues that Defendant never met his burden of establishing step one—a prima facie case of purposeful discrimination. However, in *State v. Green*, 94-887, p. 24 (La. 5/22/95), 655 So.2d 272, 288, the supreme court held that since the trial court immediately asked the State for a race-neutral explanation after the defense raised a *Batson* challenge, there was a "tacit finding by the trial court that the defense had met its burden[.]" Referencing *State v. Collier*, 553 So.2d 815 (La.1989), in *State v. Payne*, 94-114, p. 5 (La.App. 4 Cir. 6/7/95), 657 So.2d 531, 534, the fourth circuit held that "[w]here a trial judge, without expressly ruling on the issue, asks that race neutral reasons be given, the reviewing court *may* conclude that a prima facie case existed."

As noted above, while defense counsel hesitated to make a *Batson* challenge at that time, the trial court encouraged her to do so, stating that, "I think it needs to be raised." When the State protested that defense counsel did not make a prima facie showing, the trial court said, "I'm asking you to give a reason." The second time the State questioned whether defense counsel presented a prima facie case, the trial court stated, "We got through that part. I asked you to state your reason." In *State v. Drake*, 08-1194, p. 1 (La. 1/30/09), 2 So.3d 416, 417, while discussing the need for a prima facie showing, the supreme court noted that in *Johnson v. California*, 545 U.S. 162, 170, 125 S.Ct. 2410, 2417 (2005), the United States Supreme Court held it " 'did not intend the first step to be so onerous that a

8

defendant would have to persuade the judge—on the basis of all the facts, some of which are impossible for the defendant to know with certainty—that the challenge was more likely than not the product of purposeful discrimination.' " In *Drake*, 2 So.3d at 417, the supreme court further noted:

> *Johnson* expressly cautioned that "[t]he *Batson* framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process. . . . The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question." *Johnson*, 545 U.S. at 172, 125 S.Ct. at 2418.

We find that the trial court concluded a prima facie case existed when it ordered the State to respond to the *Batson* challenge and that the burden then shifted to the State to establish a race-neutral reason for the back strike of Ms. Simon.

We note that, in brief, the State did not argue the merits of the trial court's ultimate denial of Defendant's *Batson* challenge to the State back striking Ms. Simon. However, Defendant argues that the prosecutor's explanations that Ms. Simon was not as intelligent as he would have preferred and that she appeared to be inattentive during the second group's voir dire were not race-neutral reasons; accordingly, Defendant asserts that the trial court erred when it denied defense counsel's allegation of a *Batson* violation.

In a United States Supreme Court decision concerning a *Batson* issue out of Louisiana, the Supreme Court set out the standards to be considered when reviewing a trial court's ruling on the issue of discriminatory intent of the prosecutor, as follows:

> On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. See *Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395

9

(1991) (plurality opinion); *id.,* at 372, 11 S.Ct. 1859 (O'Connor, J., joined by SCALIA, J., concurring in judgment). The trial court has a pivotal role in evaluating *Batson* claims. Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility, see 476 U.S., at 98, n. 21, 106 S.Ct. 1712, and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge," *Hernandez,* 500 U.S., at 365, 111 S.Ct. 1859 (plurality opinion). In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.,* nervousness, inattention), making the trial court's firsthand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie " 'peculiarly within a trial judge's province,' " *ibid.* (quoting *Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)), and we have stated that "in the absence of exceptional circumstances, we would defer to [the trial court]," 500 U.S., at 366, 111 S.Ct. 1859 (plurality opinion).

*Snyder v. Louisiana,* 552 U.S. 472, 477, 128 S.Ct. 1203, 1207-08 (2008)(alterations in original).

It is not clear on what the trial court based its denial of the *Batson* challenge. At the end of the discussion, the trial court asked the State if Ms. Simon was the first black person to be struck and the State responded affirmatively. Defense counsel then explained that of the three black potential jurors, Ms. Simon was the second black person the State had used a peremptory challenge to exclude from the jury, the first being Ms. Scott whom the State attempted unsuccessfully to challenge for cause. The trial court then stated that, "I'm going to deny the Batson challenge on that."

As noted above, to determine whether the State exhibited a discriminatory intent, the trial court may consider the State's credibility and demeanor to determine whether the State's explanation was race-neutral. The trial court may also consider the juror's demeanor. The trial court rejected the State's first-

10

mentioned reason for the back strike of Ms. Simon—that she was not intelligent enough to follow the case. The trial court stated that "there's been absolutely nothing presented to the Court to suggest that she's unintelligent in any way or has the inability to follow the law." Ms. Simon introduced herself and stated what she did for a living. She responded appropriately to the State's questions regarding the burden of proof. She never requested clarification of a question. In *State v. Hobley*, 98-2460, p. 19 (La. 12/15/99), 752 So.2d 771, 783, *cert. denied*, 531 U.S. 839, 121 S.Ct. 102 (2000), the supreme court stated that the state's reasons for excluding black jurors must be "both substantial and supported by the record." We agree with the trial court. Being a housekeeper did not indicate Ms. Simon could not understand what facts were necessary to determine whether or not Defendant was guilty of aggravated flight from an officer.

The State's second race-neutral reason was that Ms. Simon was inattentive during the second voir dire session. In brief, the prosecutor points out that he had specifically stated during the first voir dire session that he wanted "100-percent attention, because it's important." The prosecutor told the trial court that Ms. Simon had her head down during the entirety of the second voir dire; therefore, he concluded, she was being inattentive. Defendant argues this explanation was a pretext, noting that she had been attentive enough during the first voir dire session to have been accepted by the State as a juror. Moreover, she was hearing all the trial court's and the State's same explanations of the case, the law involved, and questions for the members of the second session for the second time.

As noted in Defendant's brief, in *State v. Tilley*, 99-569, pp. 4-5 (La. 7/6/00), 767 So.2d 6, 12-13, *cert. denied,* 532 U.S. 959, 121 S.Ct. 1488 (2001), the supreme

11

court set out criteria for evaluating the state's answer to whether the peremptory challenge was race-neutral:

> Although the state's explanation must be based on more than an assumption or a hunch, *State v. Collier,* [553 So.2d 815], to be facially valid, it need not be persuasive, or even plausible; thus unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *State v. Hobley*, [98-2460 (La. 12/15/99), 752 So.2d 771]; *Purkett* [*v. Elem,*] 514 U.S. [765] at 767, 115 S.Ct. [1769] at 1771.

> Faced with a race-neutral explanation, the defendant then must prove to the trial court purposeful discrimination. *Id.* (Citing *Batson,* [474 U.S. 79]; *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). The proper inquiry in the final stage of the *Batson* analysis is whether the defendant's proof, when weighed against the prosecutor's proffered race-neutral reasons, is sufficient to persuade the trial court that such discriminatory intent is present. *Id.* (Citing *State v. Green*, 94-0887 (La.5/22/95), 655 So.2d 272, 290). Thus, the focus of the *Batson* inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. *Id.* The trial court should examine all of the available evidence in an effort to discern patterns of strikes and other statements or actions by the prosecutor during *voir dire* that support or reject a finding of discriminatory intent. *Id.*; *State v. Tyler*, 97-0338 (La.9/9/98), 723 So.2d 939, 942-43, *cert. denied, Tyler v. Louisiana*, 526 U.S. 1073, 119 S.Ct. 1472, 143 L.Ed.2d 556 (1999). Because the factual determination pertaining to intentional discrimination rests largely on credibility evaluations, the trial court's findings are entitled to great deference by the reviewing court. *Id.*; *State v. Snyder*, 98-1078 (La.4/14/99), 750 So.2d 832.

There was no evidence Ms. Simon was of such low intelligence that she could not make an informed decision as to Defendant's guilt or innocence in this case. The elements of the offense, whether Defendant committed a traffic violation, refused to pull his vehicle over when directed to do so by a pursuing patrol officer, and endangered others by his actions, were not so complicated or difficult to consider. We note that by itself, this statement could be considered racially motivated.

The trial court may have based its decision to deny Defendant's *Batson* challenge on whether Ms. Simon was not attentive during the second round of voir dire. However, in brief, Defendant argues that "this court cannot presume that the trial judge credited the prosecutor's assertion of inattentiveness as a race-neutral reasons." In support Defendant cites *Snyder*, 128 S.Ct. 1203, wherein the state made a peremptory challenge to exclude a black man from the jury. The state gave two reasons for the challenge: one reason was that the juror appeared nervous during questions, and the other reason was because the juror was a student teacher and might vote for life to go home quickly. The Supreme Court stated:

> With respect to the first reason, the Louisiana Supreme Court was correct that "nervousness cannot be shown from a cold transcript, which is why . . . the [trial] judge's evaluation must be given much deference." [*State v. Snyder*, 98-1078 (La. 9/6/06)] 942 So.2d [484], at 496. As noted above, deference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike. Here, however, the record does not show that the trial judge actually made a determination concerning Mr. Brooks' demeanor. The trial judge was given two explanations for the strike. Rather than making a specific finding on the record concerning Mr. Brooks demeanor, the trial judge simply allowed the challenge without explanation. It is possible that the judge did not have any impression one way or the other concerning Mr. Brooks' demeanor. Mr. Brooks was not challenged until the day after he was questioned, and by that time dozens of other jurors had been questioned. Thus, the trial judge may not have recalled Mr. Brooks' demeanor. Or, the trial judge may have found it unnecessary to consider Mr. Brooks demeanor, instead basing his ruling completely on the second proffered justification for the strike. For these reasons, we cannot presume that the trial judge credited the prosecutor's assertion that Mr. Brooks was nervous.

*Id.* at 1209 (first alteration in original).

As in *Snyder*, Ms. Simon's alleged inattentiveness cannot be discerned from the transcript. Considering the trial court's last and only question was whether Ms. Simon was the first black to be peremptorily challenged, this court cannot presume

that the trial court credited the prosecutor's reason why he back struck the juror as race neutral.

In *Collier*, 553 So.2d at 821 (footnote omitted)(alteration in original), the supreme court discussed the standard for determining clear and reasonably specific legitimate reasons for its ruling, as follows:

> The trial judge did not reach the point of assessing the weight and credibility of the explanations, but merely accepted the explanations because they were racially neutral on their face. "Rubber stamp" approval of any non-racial explanation, no matter how whimsical or fanciful, would destroy *Batson's* objective to ensure that no citizen is disqualified from jury service because of his race. *State v. Butler*, 731 S.W.2d 265 (Mo.App.1987). Presumably, any prosecutor could confect a set of standard racially neutral explanations for dismissing a juror. See Stewart, *Court Rules Against Jury Selection Based on Race*, 73 A.B.A.J. 68, 70 (1986). If trial courts were required to find satisfactory any reason given by the prosecutor not based on race, only prosecutors who admitted point blank that they excluded veniremen because of their race would be found in violation of the Fourteenth Amendment's guarantee of equal protection. As the court stated in *State v. Slappy*, 522 So.2d 18, 22 (Fla.1988):
>
> > [A] judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact. In order to permit the questioned challenge, the trial judge must conclude that the proffered reasons are, first, neutral and reasonable and, second, not a pretext. These two requirements are necessary to demonstrate 'clear and reasonably specific . . . legitimate reasons.' *Batson*, 476 U.S. at 89 n. 20, 106 S.Ct. at 1724 n. 20. Moreover, they serve the goal of demonstrating a 'neutral explanation related to the particular case to be tried,' *id*. at 89, 106 S.Ct at 1723, and that 'the questioned challenges were not exercised solely because of the prospective jurors' race.'

In the current case, as noted by Defendant:

Article 1 Sec. 3 of the Louisiana Constitution of 1974, provides that no law shall discriminate against a person because of race. See United State Constitution, 14th Amendment. Louisiana Rules of Court, Supreme Court Rule XXV, provides that all litigants entitled to a jury trial have a right to a jury selected from a full cross-section of

the population, and forbids exclusion of jurors based upon "race, color, religion, sex, national origin or economic status."

We agree with Defendant. Accordingly, this court must vacate the conviction and sentence and remand the case to the trial court for further proceedings. The remaining assignment of error is, therefore, moot.

## DECREE

We find that the State failed to provide a race-neutral explanation for excluding Ms. Simon from the jury. Accordingly, the trial court erred when it denied Defendant's *Batson* challenge. Therefore, Defendant's conviction for aggravated flight from an officer is hereby reversed, the sentence vacated, and the matter is remanded to the trial court for further proceedings.

**REVERSED; SENTENCE VACATED; AND REMANDED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-230

STATE OF LOUISIANA

VERSUS

LARRY BROUSSARD, JR.
AKA LARRY JAMES BROUSSARD JR.
AKA LARRY J. BROUSSARD, JR.

Pickett, J., dissenting.

To bring a *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986), challenge, the defendant must make a *prima facie* showing that the state has exercised peremptory challenges on the basis of race. Judge Ezell cites *State v. Green*, 94-887 (La. 5/22/95), 655 So.2d 272, for the proposition that once the trial court asks for a race-neutral reason for the peremptory challenge, the implication is that the trial court has concluded that the defendant has made the requisite showing. The matter before us is clearly distinguishable from Green. In *Green*, the state excercised 11 of its peremptory challenges on black veniremen, and only one on a white venireman. In this case, of the three black prospective jurors, one was seated on the jury, the state used a peremptory challenge on Ms. Scott after his challenge for cause was denied, and the state's peremptory challenge to Ms. Simon is the subject of this *Batson* claim.

This interpretation of the rule, relied on by the majority opinion, states that any time a judge asks the prosecutor to articulate a race neutral reason for the use of a peremptory challenge, the court has found a defendant has made a *prima facie* case of racial discrimination in the use of peremptory challenges. This interpretation of the rule effectively eliminates the defendant's burden of proving a *prima facie* case based on the facts in the record. Even assuming this to be an

accurate application of the jurisprudence interpreting *Batson*, an appellate court always has the authority to review the trial court's determination, whether tacit or express, on the issue of whether a *prima facie* case of racial discrimination was established by the defendant. I agree with the prosecutor's argument that the defendant failed to make a *prima facie* case of racial discrimination. Therefore, I find that the defendant's *Batson* challenge must fail, and I respectfully dissent from the majority's opinion.

Furthermore, I find that the trial court did not err in admitting testimony about events that occurred in a separate traffic stop an hour and a half before the traffic stop that resulted in the defendant's arrest for this offense. I would, therefore, affirm the defendant's conviction and sentence.