# Supreme Court of Louisiana

The Opinions handed down on the **30th day of January, 2018**, are as follows:

**PER CURIAM**:

2016-K -1836        STATE OF LOUISIANA v. LARRY BROUSSARD, JR. AKA LARRY JAMES
                    BROUSSARD, JR. AKA LARRY J. BROUSSARD, JR. (Parish of Vermilion)

                    The state's claim that a reviewing court should truncate the
                    analysis of a Batson claim because a trial court erred in finding
                    the defense carried its burden of production under Batson's first
                    step is contrary to the jurisprudence. Furthermore, it is
                    inconsistent with the purpose of the Batson framework, which "is
                    designed to produce actual answers to suspicions and inferences
                    that discrimination may have infected the selection process."
                    Johnson, 545 U.S. at 172, 125 S.Ct. at 2418. The state's
                    remaining argument regarding the ultimate outcome of the Batson
                    inquiry runs afoul of Snyder v. Louisiana, 522 U.S. 472, 128
                    S.Ct. 1203, 170 L.Ed.2d 175 (2008), which is dispositive here. A
                    reviewing court should not presume that the trial judge credited
                    a demeanor-based reason from a trial court's silence and the
                    particular circumstances in Snyder and here are strikingly
                    similar. While we are mindful that a trial court's determination
                    as to purposeful discrimination rests largely on credibility
                    evaluations and is therefore entitled to great deference, Batson,
                    476 U.S. at 98 n.21, 106 S.Ct. at 1724, we note that the trial
                    court rejected the state's first proffered reason and we cannot
                    presume the trial court accepted the state's demeanor-based
                    proffered reason. Therefore, we find that the court of appeal
                    correctly applied Snyder to vacate the conviction and sentence
                    and remand to the trial court for further proceedings. The court
                    of appeal's decision is affirmed.
                    AFFIRMED.

                    CLARK, J., dissents for the reasons assigned by Justice Genovese.
                    HUGHES, J., dissents for the reasons assigned by Genovese, J.
                    GENOVESE, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2016-K-1836

STATE OF LOUISIANA

VERSUS

**LARRY BROUSSARD, JR.**
**AKA LARRY JAMES BROUSSARD, JR.**
**AKA LARRY J. BROUSSARD, JR.**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,**
**THIRD CIRCUIT, PARISH OF VERMILION**

**PER CURIAM**

Defendant Larry Broussard, Jr. was convicted of aggravated flight from an officer. During voir dire, defense counsel challenged, pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, the state's use of a backstrike against an African-American female prospective juror from the first panel. Specifically, defense counsel noted that the state had not previously challenged this prospective juror for cause and stated without further elaboration that "it seems like she's one of two potential black jurors."

In response to the trial court's request for a race-neutral reason for the backstrike, the state ultimately gave two. The state first claimed—based on the prospective juror's occupation as a housekeeper and her (otherwise unspecified) reactions to the questions asked—that she was not intelligent enough to be a juror. After the trial court resoundingly rejected the state's characterization of the prospective juror's intelligence ("there's been absolutely nothing presented to the Court to suggest that she's unintelligent in any way or has any inability to follow

the law"), the state then claimed she was inattentive during the questioning of the second panel. After hearing this second reason, the trial court inquired as to how many challenges the state had exercised against prospective jurors who were African Americans. After hearing that the state had struck two of three African-American prospective jurors (thereby accepting one), the trial court denied the *Batson* challenge without explanation.

In a split-panel decision, the court of appeal reversed, with the majority finding a *Batson* violation in the state's exclusion of the backstruck prospective juror, and thereby deeming a second assignment of error moot. *State v. Broussard*, 16-0230 (La. App. 3 Cir. 9/28/16), 201 So.3d 400. The majority rejected the state's argument that defendant failed to carry his burden of establishing a prima facie case of purposeful discrimination in *Batson*'s first step. The majority noted that the trial court demanded a race-neutral reason despite the state's protest that the defense had not made a prima facie showing, and therefore the majority found "that the trial court concluded a prima facie case existed when it ordered the State to respond to the *Batson* challenge and that the burden then shifted to the State to establish a race-neutral reason for the back strike of [the prospective juror]." *Broussard*, 16-0230, p. 9, 201 So.3d at 406.

The majority also found that "[i]t is not clear on what the trial court based its denial of the *Batson* challenge." *Broussard*, 16-0230, p. 10, 201 So.3d at 406. The majority then noted that the trial court rejected the state's first proffered reason, i.e. that the prospective juror was unintelligent, and the majority further found there was nothing in the record supporting the state's assessment of the prospective juror's intelligence. Citing *Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2010), the majority also declined to presume the trial court credited the state's demeanor-based proffered reason, i.e. that the prospective juror was

2

inattentive, and the majority found no indication of inattentiveness could be discerned from the transcript of voir dire.[1] Therefore, the court of appeal vacated the conviction and sentence and remanded to the trial court for further proceedings.

The state contends that the court of appeal erred in failing to recognize that defendant was never required to make a prima facie showing of purposeful discrimination in *Batson*'s first step. The state also contends that, even if a prima facie showing was made, both of its reasons for backstriking the prospective juror, i.e. her lack of intelligence and attention, were racially neutral, and the trial court never found that they were pretexts for purposeful discrimination. Therefore, the state claims that the trial court did not abuse its discretion in denying the *Batson* challenge. We disagree.

In *Johnson v. California*, 545 U.S. 162, 170, 125 S.Ct. 2410, 2417, 162 L.Ed.2d 129 (2005), the Supreme Court emphasized that:

> We did not intend the first step to be so onerous that a defendant would have to persuade the judge-on the basis of all the facts, some of which are impossible for the defendant to know with certainty-that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.

In addition, the Supreme Court has found, "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d

---

[1] Furthermore, it should be noted that our independent review of the record shows that not only is there no indication that the prospective juror was inattentive, there is some indication the prospective juror was in fact attentive. The state accepted the prospective juror after questioning her in the first panel. Evidently, the state saw no inattentiveness on her part during voir dire of the first panel. Although she was not part of the second panel, the state nonetheless directed a question at the prospective juror at issue here during voir dire of the second panel. She answered fully. She did not ask to have the question repeated or otherwise give any indication she had not been paying attention.

395 (1991).

The rule of *Hernandez* has not been limited in the Fifth Circuit to those situations in which the government volunteers a race-neutral reason, as contrasted with those in which the trial court demands that the government provide one. In each scenario, the preliminary issue of whether defendant had made a prima facie showing is moot. *See, e.g.*, *United States v. Williams*, 264 F.3d 561, 571 (5th Cir. 2001) ("The district court then asked the Government to provide a race-neutral justification for striking the prospective jurors. Where, as here, the prosecutor tenders a race-neutral explanation for his peremptory strikes, the question of Defendant's prima facie case is rendered moot and our review is limited to the second and third steps of the Batson analysis.") (citing *United States v. Broussard*, 987 F.2d 215, 220 n.4 (5th Cir. 1993) (declining to decide whether defendant had established prima facie case of racial discrimination, where district court required explanation for peremptory strikes)); *see also United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir. 1987) ("[A]ppellate review should not become bogged down on the question of whether the defendant made a prima facie showing in cases where the district court has required an explanation.").

Likewise, this court has found that "[a] trial judge may . . . effectively collapse the first two stages of the *Batson* procedure, whether or not the defendant established a prima facie case of purposeful discrimination, and may then perform the critical third step of weighing the defendant's proof and the prosecutor's race-neutral reasons to determine discriminatory intent." *State v. Jacobs*, 99-0991, p. 8 (La. 5/15/01), 803 So.2d 933, 941. This court has also stated:

> If the trial judge had not found there was a prima facie case of purposeful discrimination, there was no necessity to call for explanation of the challenges. Of course, the trial judge may have believed there was not a prima facie showing, but still required an explanation as a precaution in the event the appellate court determined

4

there was a prima facie showing.

*State v. Collier*, 553 So.2d 815, 819 n.5 (La. 1989).

The state's claim that a reviewing court should truncate the analysis of a *Batson* claim because a trial court erred in finding the defense carried its burden of production under *Batson*'s first step is contrary to the jurisprudence above. Furthermore, it is inconsistent with the purpose of the *Batson* framework, which "is designed to produce actual answers to suspicions and inferences that discrimination may have infected the selection process." *Johnson*, 545 U.S. at 172, 125 S.Ct. at 2418.

The state's remaining argument regarding the ultimate outcome of the *Batson* inquiry runs afoul of *Snyder v. Louisiana*, 522 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), which is dispositive here. In *Snyder*, the Supreme Court stated:

> On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. *See Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion); *id.*, at 372, 111 S.Ct. 1859 (O'Connor, J., joined by Scalia, J., concurring in judgment). The trial court has a pivotal role in evaluating *Batson* claims. Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility, *see* 476 U.S., at 98, n. 21, 106 S.Ct. 1712, and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge," *Hernandez*, 500 U.S., at 365, 111 S.Ct. 1859 (plurality opinion). In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g., nervousness, inattention), making the trial court's firsthand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie "'peculiarly within a trial judge's province,'" *ibid.* (quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)), and we have stated that "in the absence of exceptional circumstances, we would defer to [the trial court]," 500 U.S., at 366, 111 S.Ct. 1859 (plurality opinion).

*Snyder*, 552 U.S. at 477, 128 S.Ct. at 1207–08. In *Snyder*, as here, the prosecutor

5

offered two race-neutral reasons, one of which was based on the prospective juror's demeanor. Regarding the demeanor-based reason, the trial court in *Snyder*, just as the trial court here,[2] did not make an explicit determination. The *Snyder* court found:

> With respect to the first reason, the Louisiana Supreme Court was correct that "nervousness cannot be shown from a cold transcript, which is why ... the [trial] judge's evaluation must be given much deference." 942 So.2d, at 496. As noted above, deference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike. Here, however, the record does not show that the trial judge actually made a determination concerning Mr. Brooks' demeanor. The trial judge was given two explanations for the strike. Rather than making a specific finding on the record concerning Mr. Brooks' demeanor, the trial judge simply allowed the challenge without explanation. It is possible that the judge did not have any impression one way or the other concerning Mr. Brooks' demeanor. Mr. Brooks was not challenged until the day after he was questioned, and by that time dozens of other jurors had been questioned. Thus, the trial judge may not have recalled Mr. Brooks' demeanor. Or, the trial judge may have found it unnecessary to consider Mr. Brooks' demeanor, instead basing his ruling completely on the second proffered justification for the strike. For these reasons, *we cannot presume that the trial judge credited the prosecutor's assertion that Mr. Brooks was nervous.*

*Snyder*, 552 U.S. at 479, 128 S.Ct. at 1209 (emphasis added).

The U.S. Supreme Court in *Thaler v. Haynes*, 559 U.S. 43, 48–49, 130 S.Ct. 1171, 1174–75, 175 L.Ed.2d 1003 (2010), retreated somewhat from *Snyder*:

> . . . [W]here the explanation for a peremptory challenge is based on a prospective juror's demeanor, the judge should take into account, among other things, any observations of the juror that the judge was able to make during the voir dire. But *Batson* plainly did not go further and hold that a demeanor-based explanation must be rejected if the judge did not observe or cannot recall the juror's demeanor.
>
> Nor did we establish such a rule in *Snyder*. In that case, the judge who presided over the voir dire also ruled on the *Batson* objections, and thus we had no occasion to consider how *Batson* applies when different judges preside over these two stages of the jury selection process. *Snyder*, 552 U.S., at 475–478, 128 S.Ct. 1203. The part of *Snyder* on which the Court of Appeals relied concerned a very

---

[2] The trial court in the present case, after being informed of the number of challenges the state had exercised against African Americans, simply stated, "All right. I'm going to deny the *Batson* challenge on that."

6

different problem. The prosecutor in that case asserted that he had exercised a peremptory challenge for two reasons, one of which was based on demeanor (i.e., that the juror had appeared to be nervous), and the trial judge overruled the *Batson* objection without explanation. 552 U.S., at 478–479, 128 S.Ct. 1203. We concluded that the record refuted the explanation that was not based on demeanor and, in light of the particular circumstances of the case, we held that the peremptory challenge could not be sustained on the demeanor-based ground, which might not have figured in the trial judge's unexplained ruling. *Id.*, at 479–486, 128 S.Ct. 1203. Nothing in this analysis supports the blanket rule on which the decision below appears to rest.

The opinion in *Snyder* did note that when the explanation for a peremptory challenge "invoke[s] a juror's demeanor," the trial judge's "firsthand observations" are of great importance. *Id.*, at 477, 128 S.Ct. 1203. And in explaining why we could not assume that the trial judge had credited the claim that the juror was nervous, we noted that, because the peremptory challenge was not exercised until some time after the juror was questioned, the trial judge might not have recalled the juror's demeanor. *Id.*, at 479, 128 S.Ct. 1203. These observations do not suggest that, in the absence of a personal recollection of the juror's demeanor, the judge could not have accepted the prosecutor's explanation. Indeed, *Snyder* quoted the observation in *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion), that the best evidence of the intent of the attorney exercising a strike is often that attorney's demeanor. See 552 U.S., at 477, 128 S.Ct. 1203.

*Haynes*, 559 U.S. at 48–49, 130 S.Ct. at 1174–75 (footnote omitted).

However, *Snyder*'s guiding principle remains intact that a reviewing court should not presume that the trial judge credited a demeanor-based reason from a trial court's silence, and the particular circumstances in *Snyder* and here are strikingly similar. While we are mindful that a trial court's determination as to purposeful discrimination rests largely on credibility evaluations and is therefore entitled to great deference, *Batson*, 476 U.S. at 98 n.21, 106 S.Ct. at 1724, we note that the trial court rejected the state's first proffered reason and we cannot presume the trial court accepted the state's demeanor-based proffered reason.[3] Therefore,

---

[3] The state, in contrast, concedes in its brief that the trial court rejected the state's characterization of the prospective juror as inattentive. *See* State's brief, p. 10 ("In this instances, while the trial court did not agree with the prosecutor's reasoning that the prosective juror '. . . does not appear to be as intelligent as I would like to see on a juror" *or even that she was inattentive*, . . . .") (citations to the record omitted) (emphasis added). While that concession is

7

we find that the court of appeal correctly applied *Snyder* to vacate the conviction and sentence and remand to the trial court for further proceedings. The court of appeal's decision is affirmed.

**AFFIRMED**

---

not born out by the record, which shows the trial judge made no explicit determination regarding inattentiveness, the concession was nonetheless made by the state, which is bound by it, and it provides an additional reason to reject the state's arguments.

SUPREME COURT OF LOUISIANA

NO. 2016-K-1836

STATE OF LOUISIANA

VERSUS

LARRY BROUSSARD, JR.
AKA LARRY JAMES BROUSSARD, JR.
AKA LARRY J. BROUSSARD. JR.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF VERMILION

CLARK, J., dissents for the reasons assigned by Justice Genovese.

SUPREME COURT OF LOUISIANA

No. 2016-K-1836

STATE OF LOUISIANA

VERSUS

LARRY BROUSSARD, JR.
AKA LARRY JAMES BROUSSARD, JR.
AKA LARRY J. BROUSSARD, JR.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF VERMILION

Hughes, J., dissents for the reasons assigned by Genovese, J.

SUPREME COURT OF LOUISIANA

NO. 2016-K-1836

STATE OF LOUISIANA

VERSUS

LARRY BROUSSARD, JR.
AKA LARRY JAMES BROUSSARD, JR.
AKA LARRY J. BOURSSARD, JR.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF VERMILION

**GENOVESE, J., dissents and assigns reasons.**

I would reverse the ruling of the court of appeal and reinstate defendant's conviction and sentence.

In my view, the court of appeal erred in its application of *Batson v. Kentucky*, 106 S.Ct. 1712, 476 U.S. 79 (1986). Merging steps two and three of the *Batson* analysis impermissively shifted the burden of proof to the proponent of the strike. *See State v. Harris*, 15-0995 (La. 10/19/16), 217 So.3d 255, 259-260 (citing *Purkett v. Elem*, 115 S.Ct. 1769, 1771, 514 U.S. 765, 768 (1995); *State v. Nelson*, 10-1724, 10-1726 (La. 3/13/12), 85 So.3d 21, 32). The State articulated race-neutral reasons for the exercise of its peremptory challenge. It is not until the third step of *Batson* that the persuasiveness of the race-neutral reason becomes relevant. *Harris*, 217 So.3d at 259 (citing *Purkett*, 115 S.Ct. at 1771, 514 U.S. at 768; *Nelson*, 85 So.3d at 32). The question is whether the defendant's proof, when weighed against the State's proffered "race-neutral" reasons, is strong enough to persuade the trier-of-fact that discriminatory intent is present. *State v. Green*, 94-0887 (La. 5/22/95), 655 So.2d 272, 290. Defendant offered no facts or circumstances supporting an inference that the State exercised its strikes in a discriminatory manner. Of the three

prospective black jurors, one was seated, the second was peremptorily challenged after the State's challenge for cause was denied, and the third became the subject of defendant's *Batson* challenge. Defendant's proof, when weighed against the State's race-neutral reasons, was not sufficient to prove the existence of purposeful discriminatory intent. *Id.*