STREETER, ACTING P.J., CONCURRING
I join in the panel's opinion but write separately to express a slightly different take on the trial court's observation that the prosecutor's having passed on opportunities to strike a same-race juror and a same-race alternate juror constitutes "powerful evidence" supporting the credibility of his proffered reasons at step three of the Batson / Wheeler[16] analysis.
*308 I.
At the third step of Batson / Wheeler , the focus is on whether the trial court finds the prosecutor's race-neutral explanations to be credible with respect to *881 the particular juror excused. As is the case with any inquiry into discriminatory treatment, the issue is context-sensitive, allowing a variety of circumstances to be taken into account. And among these circumstances is whether the prosecutor passed the panel-showing a willingness to accept its composition-with one or more same-race jurors included.
But attaching too much significance to the prosecutor's willingness to pass the panel with one or two same-race jurors serving on it "would provide an easy means of justifying a pattern of unlawful discrimination which stops only slightly short of total exclusion." ( People v. Snow (1987) 44 Cal.3d 216, 225, 242 Cal.Rptr. 477, 746 P.2d 452 ( Snow ).) Although the permissibility of taking into account the prosecutor's willingness to accept same-race jurors has often been repeated over the years ( ibid. ; see People v. Turner (1994) 8 Cal.4th 137, 168, 32 Cal.Rptr.2d 762, 878 P.2d 521, disapproved on another point in People v. Griffin (2004) 33 Cal.4th 536, 555, fn. 5, 15 Cal.Rptr.3d 743, 93 P.3d 344 ; People v. Gutierrez (2017) 2 Cal.5th 1150, 1170-1171, 218 Cal.Rptr.3d 289, 395 P.3d 186 ; People v. Blacksher (2011) 52 Cal.4th 769, 802, 130 Cal.Rptr.3d 191, 259 P.3d 370 ( Blacksher ); People v. Jones (2011) 51 Cal.4th 346, 362, 121 Cal.Rptr.3d 1, 247 P.3d 82 ; People v. Lenix (2008) 44 Cal.4th 602, 629, 80 Cal.Rptr.3d 98, 187 P.3d 946 ( Lenix ); People v. Kelly (2007) 42 Cal.4th 763, 780, 68 Cal.Rptr.3d 531, 171 P.3d 548 ( Kelly ); People v. Cornwell (2005) 37 Cal.4th 50, 70, 33 Cal.Rptr.3d 1, 117 P.3d 622 ( Cornwell ), disapproved on another point in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22, 87 Cal.Rptr.3d 209, 198 P.3d 11 ), this cautionary language from Snow warrants emphasis. It is not just a stray side comment. The Snow court discusses the issue at some length, at one point expressly overruling a case that was apparently based on the premise that "if the jury panel contains at least a minimum number of members of the cognizable group to provide defendant a representative cross-section of the community, he cannot complain of the prosecutor's pattern of unlawful discrimination in the use of his peremptory challenges." ( Snow , supra , 44 Cal.3d at p. 225, 242 Cal.Rptr. 477, 746 P.2d 452 [disapproving People v. Davis (1987) 189 Cal.App.3d 1177, 1190-1191, 234 Cal.Rptr. 859 ].)
II.
Stepping back and starting from first principles in this area, I note that, historically, the vice here was systematic exclusion of women and African Americans from jury service. (See Taylor v. Louisiana (1975) 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 [exclusion of women]; Glasser v. United States (1942) 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 [same], superseded on other grounds as stated in Bourjaily v. United States (1987) 483 U.S. 171, 181, 107 S.Ct. 2775, 97 L.Ed.2d 144 ;
*882 Peters v. Kiff (1972) 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 [exclusion of African Americans]; cf. Smith v . Texas (1940) 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 [exclusion of African Americans from grand jury service].)
Adapting these systematic exclusion cases to the issue of discriminatory use of peremptory challenges, our Supreme Court, in Wheeler, supra , 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748, addressed a situation where the prosecutor struck every single one of the African Americans on the venire in that case. ( Id. at pp. 262-265, 148 Cal.Rptr. 890, 583 P.2d 748.) Because *309 sweeping African Americans from the jury pool was based on a belief in "group bias," the Court found a violation of the defendant's right to an impartial jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution. ( Id . at pp. 276-278, 148 Cal.Rptr. 890, 583 P.2d 748.)
Although the precise doctrinal basis of Wheeler is no longer much discussed, Wheeler 's familiar three-step framework of analysis to detect discriminatory use of peremptory challenges remains vital under current law, having been embraced and effectively merged with the holding in Batson, supra , 476 U.S. at pages 94-98, 106 S.Ct. 1712. But there remains a significant difference between Wheeler and Batson . Batson , like Wheeler , was a case in which the prosecutor used his strikes to sweep all African Americans from a petit jury. ( Id . at. p. 83, 106 S.Ct. 1712.) While adopting the same three-step approach to analysis that Wheeler did, the high court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." ( Id . at p. 86, 106 S.Ct. 1712.)
Today, in practice, there is no recognized difference between Wheeler and Batson -hence the commonly used label Batson / Wheeler -but vestiges of Wheeler 's doctrinal foundation remain in some of the Batson / Wheeler case law. I think the undue weight the trial court in this case attached to the prosecutor's acceptance of two same-race jurors illustrates that. The whole point of Wheeler was to root out systematic exclusion of members of protected groups. Thus, under Wheeler , it was an effective rebuttal to show that while the prosecutor may have engaged in some discrimination, the discrimination was not systematic enough to violate article 1, section 16 of the California Constitution.[17]
Not so any more. Things changed in the years following Batson , as shown most clearly in *883 Snyder v. Louisiana (2008) 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 ( Snyder ), where the high court made clear that the Constitution forbids striking even a single prospective juror for a discriminatory purpose. ( Id . at p. 478, 128 S.Ct. 1203.) Under the now governing equal protection frame of analysis, the stages of proof are identical to those outlined in Wheeler , and indeed at step one, which tests for whether a prima facie case has been made out, the focus continues to be in part on whether the prosecutor's pattern of using strikes shows systematic exclusion of a protected group. (See Batson , supra , 476 U.S. at pp. 96-97, 106 S.Ct. 1712.) But once a prima facie case is made out and the prosecutor has been required to proffer race-neutral reasons at step two, the focus shifts to whether discriminatory intent has been shown in striking a particular juror, after taking all relevant circumstances into account. (See Miller-El v. Cockrell (2003) 537 U.S. 322, 338-340, 342-347, 123 S.Ct. 1029, 154 L.Ed.2d 931.)
Our Supreme Court follows the same three-step mode of analysis, ending at step three with its individualized focus on discriminatory intent. ( *310 People v. Williams (2013) 56 Cal.4th 630, 649, 156 Cal.Rptr.3d 214, 299 P.3d 1185 ; Jones , supra , 51 Cal.4th at pp. 363-369, 121 Cal.Rptr.3d 1, 247 P.3d 82 ; Lenix , supra , 44 Cal.4th at pp. 613, 628-631, 80 Cal.Rptr.3d 98, 187 P.3d 946.) Systematic exclusion remains highly relevant at step one, but at step three the peremptory excusal of even a single prospective juror violates Batson / Wheeler in California just as it does throughout the country under Snyder . The net result is that we now have, in effect, a "zero-tolerance" policy when it comes to discriminatory use of peremptory challenges under state and federal law.
III.
Applying the California Supreme Court's Batson / Wheeler step three cases on this record, it is certainly not correct to say, as the trial court did here, that the prosecutor's acceptance or willingness to accept a same-race juror and a same-race alternate was "powerful" evidence rebutting the prima facie case of discrimination the trial court recognized had been established. At Batson / Wheeler step three, the issue was whether the prosecutor's proffered reasons for excusing David L., Pierre M., and Domanique J.-in each case, focusing on those particular jurors-were pretextual, not whether his decision to pass on some other juror was free of discrimination. Certainly, the prosecutor's acceptance of two others may have been indicative of good faith, but good faith in and of itself was not the issue. Many perpetrators of discrimination are sincere.
Psychological science on what is known as "moral credentials" and "moral licensing" in the field of implicit bias tells us that, sometimes, discrimination is masked by a discriminator's attempt to demonstrate lack of prejudice on a prior occasion. (Quintanilla & Kaiser, *884 The Same-Actor Inference of Nondiscrimination: Moral Credentialing and the Psychological and Legal Licensing of Bias (2016) 104 Cal. L.Rev. 1, 9-10.) Anticipating the need to apply concepts of implicit bias to the discriminatory use of peremptory challenges, Justice Marshall, concurring in Batson , said that "outright prevarication by prosecutors [is not] the only danger here. '[I]t is even possible that an attorney may lie to himself in an effort to convince himself that his motives are legal.' [Citation.] A prosecutor's own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is 'sullen,' or 'distant,' a characterization that would not have come to his mind if a white juror had acted identically. A judge's own conscious or unconscious racism may lead him to accept such an explanation as well supported. ... [Sometimes] prosecutors' peremptories are based on their 'seat-of-the-pants instincts' as to how particular jurors will vote. ... Yet 'seat-of-the-pants instincts' may often be just another term for racial prejudice." ( Batson , supra , 476 U.S. at p. 106, 106 S.Ct. 1712 (conc. opn. of Marshall, J.).)

Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

See Batson v. Kentucky (1986) 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (Batson ); People v. Wheeler (1978) 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (Wheeler ), overruled in part by Johnson v. California (2005) 545 U.S. 162, 165, 125 S.Ct. 2410, 162 L.Ed.2d 129.

That is why most of the post-Batson cases citing Snow are not step three cases, where the issue is the prosecutor's intent in excusing a particular juror, but step one cases, where the issue is whether the pattern of strikes is sufficient to make out a prima facie case. (See Turner , supra , 8 Cal.4th at p. 168, 32 Cal.Rptr.2d 762, 878 P.2d 521 ; Kelly , supra , 42 Cal.4th at p. 780, 68 Cal.Rptr.3d 531, 171 P.3d 548 ; Blacksher , supra , 52 Cal.4th at p. 802, 130 Cal.Rptr.3d 191, 259 P.3d 370 ; Cornwell , supra , 37 Cal.4th at p. 70, 33 Cal.Rptr.3d 1, 117 P.3d 622.)