Filed 2/27/24  P. v. Cardenas-Jacobo CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LUIS JESUS CARDENAS-JACOBO,<br><br>        Defendant and Appellant. | A165644<br><br>(San Mateo County<br>Super. Ct. No. 21-SF-<br>013873-A) |

Luis Jesus Cardenas-Jacobo (defendant) appeals from convictions of first degree burglary and other offenses.  He contends his convictions must be reversed and the case remanded for a new trial because the trial court's denial of his objection to the prosecutor's use of a peremptory challenge was erroneous under Code of Civil Procedure section 231.7.  We find he failed to preserve his claims for appeal and affirm the judgment.

**BACKGROUND**

The facts underlying defendant's offenses, for the most part, are not relevant to the sole issue on appeal.  Suffice to say the charges arose from an entry into, and taking of personal property from, the parking garage of an apartment complex.  A police officer familiar with the garage and apartments viewed a surveillance video and recognized defendant from prior interactions as the person in the video.  One of the stolen items was found in defendant's

1

garage, less than a mile from the apartment complex. The other stolen item was found at a Holiday Inn about one block from the apartment complex.

Defendant was charged by information filed on February 1, 2022, with felony first degree burglary (Pen. Code, § 460, subd. (a)) (count 1); felony grand theft of personal property (*id.*, § 487, subd. (a)) (count 2); misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364) (count 3); and misdemeanor possession of a controlled substance (*id.*, § 11377, subd. (a)) (count 4). Count 1 alleged that the offense was a serious felony (Pen. Code, § 1192.7, subd. (c)) and a violent felony (*id.*, § 667.5, subd. (c)(21) [another person, other than an accomplice, present in residence]) and was committed while defendant was released from custody on bail or his own recognizance (*id.*, § 12022.1), and three prior convictions (*id.*, § 1203, subd. (e)(4)) were alleged as to both felony counts.

Defendant entered no contest pleas to the two misdemeanor counts and the court granted his unopposed motions to bifurcate the Penal Code section 12022.1 allegation and prior conviction allegations from trial. He waived jury trial on these allegations.

A jury found defendant guilty of first degree burglary and found the Penal Code section 667.5 allegation true; the jury found him not guilty of grand theft but guilty of the lesser included offense of petty theft (Pen. Code, § 484). The court then found the bifurcated Penal Code section 12022.1 and prior conviction allegations true.

After denying a defense motion for a new trial, the trial court struck the Penal Code section 667.5 finding for purposes of sentencing, then sentenced defendant to the middle term of four years for the burglary and a concurrent six-month term for the three misdemeanors and ordered defendant to pay restitution and various fines and fees.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I.

### *Code of Civil Procedure Section 231.7*

" 'Before January 1, 2022, trial courts examined peremptory challenges under the three-step inquiry established by *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258. Recognizing the limitations of the *Batson*/*Wheeler* inquiry, the Legislature enacted Assembly Bill No. 3070 (2019-2020 Reg. Sess.) to add Code of Civil Procedure section 231.7,[1] which creates new procedures for identifying unlawful discrimination in the use of peremptory challenges.' (*People v. Jaime* (2023) 91 Cal.App.5th 941, 943, fn. omitted (*Jaime*).)"[2] (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 791.) The Legislature found that "peremptory challenges are frequently used in criminal cases to exclude potential jurors from serving based on their race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups" and "the existing procedure for determining whether a peremptory challenge was exercised on the basis of a legally impermissible reason has failed to eliminate that discrimination." (Stats. 2020, ch. 318, § 1,

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Under the *Batson / Wheeler* analysis, "First, the defendant must make a prima facie case by showing facts sufficient to support an inference of discriminatory purpose. (*Johnson v. California* (2005) 545 U.S. 162, 168.) Second, if the defendant makes a prima facie showing, the burden shifts to the prosecutor to offer a permissible, nondiscriminatory explanation for the strike. (*Ibid.*) Third, if the prosecutor offers a nondiscriminatory explanation, the trial court must decide whether that explanation is genuine, or whether impermissible discrimination in fact motivated the strike. (*Ibid.*)" (*People v. Battle* (2021) 11 Cal.5th 749, 772.)

subd. (b).)  The Legislature stated its intent "to put into place an effective procedure for eliminating the unfair exclusion of potential jurors based on race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, through the exercise of peremptory challenges" and for the new law to "be broadly construed to further the purpose of eliminating the use of group stereotypes and discrimination, whether based on conscious or unconscious bias, in the exercise of peremptory challenges."  (*Id.*, subds. (a), (c).)

Section 231.7, subdivision (a), prohibits use of a peremptory challenge "to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups."  Unlike *Batson/Wheeler* analysis, which focuses on " ' "the subjective *genuineness* of the race-neutral reasons given for the peremptory challenge, *not* on the objective reasonableness of those reasons" ' " (*People v. Miles* (2020) 9 Cal.5th 513, 539) and ultimately asks whether the opponent of the peremptory challenge has shown purposeful discrimination (*People v. Riccardi* (2012) 54 Cal.4th 758, 786, overruled on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216), section 231.7 uses an objective standard and provides that the court "need not find purposeful discrimination to sustain the objection" to a peremptory challenge. (§ 231.7, subd. (d)(1).)  "Under section 231.7, the party objecting to the peremptory challenge is no longer required to make a prima facie showing of racial discrimination. Instead, 'upon objection to the exercise of a peremptory challenge pursuant to [section 231.7],' the party exercising the peremptory challenge must state the reasons for exercising the challenge.  (§ 231.7, subd. (c).)  Also, certain reasons for a peremptory challenge are

4

presumptively invalid under section 231.7 unless rebutted by clear and convincing evidence that they are unrelated to the prospective juror's perceived membership in a protected group and that the reasons bear on the juror's ability to be fair and impartial.  (§ 231.7, subd. (e).)"  (*Jaime, supra,* 91 Cal.App.5th at p. 943.)

In deciding whether to sustain an objection under section 231.7, the trial court "shall evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances."  (§ 231.7, subd. (d)(1).) The court "shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge."  (*Ibid.*)  "If the court determines there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained."  (*Ibid.*)  "[A] 'substantial likelihood' means more than a mere possibility but less than a standard of more likely than not" (§ 231.7, subd. (d)(2)(B)) and "an objectively reasonable person is aware that unconscious bias, in addition to purposeful discrimination, [has] resulted in the unfair exclusion of potential jurors in the State of California."  (*Id.*, subd. (d)(2)(A).)

Section 231.7 directs appellate courts to review the denial of an objection under section 231.7 "de novo, with the trial court's express factual findings reviewed for substantial evidence."  (§ 231.7, subd. (j).)  "The appellate court shall not impute to the trial court any findings, including findings of a prospective juror's demeanor, that the trial court did not expressly state on the record.  The reviewing court shall consider only

5

reasons actually given under subdivision (c) and shall not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror . . . ." (*Ibid*.)  If it is determined that an objection was erroneously denied, "that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Ibid*.)

## II.

### *The Peremptory Challenge and the Trial Court's Ruling*

During voir dire, the prosecutor asked several of the prospective jurors whether they would feel comfortable identifying the Golden Gate Bridge from a photograph or postcard of the Bay Area.  When prospective juror J.D. was asked this question, he responded "yes," and the following colloquy ensued:

"[Prosecutor]:  Yeah?  Would you feel comfortable pointing out the Golden Gate Bridge in an aerial picture of the Bay Area?

"[J.D.]:  The top of the hills and on the side.

"[Prosecutor]:  Okay.  And sorry, I don't mean to embarrass you if I'm communicating in a way that is difficult for you to understand.

"[J.D.]:  Yeah, a little bit.  My English is not—broken English."

The prosecutor continued with a series of questions about whether J.D. had been able to understand the proceedings, to which he responded in the affirmative, then asked if he had any language difficulties that he thought would "prohibit [him] from being an effective juror" in the case.  J.D. replied that he understood "parts," but that "new words" were hard to understand. He again answered "yes" when asked if he understood what the judge and attorneys were saying and if he would be able to understand witnesses.

Subsequently, the prosecutor exercised her sixth peremptory challenge to excuse prospective juror J.D. and defense counsel made "a *Batson/Wheeler* motion." The trial court deferred hearing the motion until the next break, the defense exercised its sixth peremptory challenge, and the jury and alternates were sworn.

Outside the presence of the jury, defense counsel stated that the prosecutor's challenge to J.D. removed the last Hispanic from the jury, the prosecutor's previous challenge having also removed a Hispanic prospective juror (J.C.).[3] Defense counsel questioned the validity of the challenge, arguing that defendant is Hispanic, a defendant is entitled to a jury that is a cross-section of the community, San Mateo county is over 30 percent Hispanic, and defendant was left with "no peer or juror representative of [his] race."

The prosecutor responded, first, that J.C. (the previously excused juror) did not "appear to be Hispanic" but rather Filipino, and she challenged him because "he expressed earlier during voir dire that he would feel sympathetic towards a defendant and would feel guilty for finding him guilty." The prosecutor then explained that she challenged J.D. because of his response to the hypothetical put to him during voir dire: "My hypothetical to him about the Golden Gate Bridge and whether or not he would feel confident in identifying the Golden Gate Bridge in a photograph, and he said no. [¶] I

---

[3] We follow the practice of the parties and trial court in characterizing these jurors as Hispanic, in keeping with the California Supreme Court's recognition of "Hispanic individuals" as " 'members of a cognizable class for purposes of *Batson/Wheeler* motions' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1087), although we are aware of data indicating that "the Hispanic and Latino labels are not universally embraced by the population that has been labeled, even as they are widely used." (Lopez et al., Pew Research Center, Who is Hispanic? (Sept. 15, 2022).)

think that . . . the key issue in this case is being able to identify the defendant through surveillance footage. And the People are obviously seeking jurors who would feel comfortable making that decision." The prosecutor stated that none of her other peremptory challenges were to Hispanics and noted that the defense had challenged two prospective jurors with Hispanic surnames and the two alternates who remained on the jury, without objection, were Hispanic.

The court denied the "*Batson-Wheeler* motion," finding that the prosecutor's reasons "were not racially motivated" and "there were good reasons to . . . use a peremptory challenge on these jurors." The court noted that each side had used six peremptory challenges, the ethnicity of two of the jurors was "unknown to the Court" and "[c]ould be Hispanic origin," and both alternates "could also be of Hispanic origin."

### III.

### *Defendant Forfeited His Section 231.7 Claims by Failing to Raise Them at Trial.*

Defendant contends on this appeal that the prosecutor's reasons for excusing J.D. were presumptively invalid under section 231.7, subdivisions (e)(13), (e)(7) and (g)(1)(C), and the trial court failed to consider the "totality of the circumstances" as required by section 231.7, subdivision (d)(1), or find the presumption of invalidity overcome by clear and convincing evidence as required by section 231.7, subdivision (e). He argues the trial court's finding that the reasons were not racially motivated was not supported by substantial evidence and failed to comply with section 231.7.

Defendant did not make any of these arguments in the trial court: Defense counsel argued the peremptory challenge to J.D. was invalid under *Batson/Wheeler* because it removed the last Hispanic juror from the panel and, after the prosecutor stated her reasons for the challenge, added only

8

that the prosecutor's reference to the defense having challenged Hispanic jurors was irrelevant.

"In general, the failure to articulate an objection to a peremptory challenge forfeits the issue on appeal." (*Jaime, supra,* 91 Cal.App.5th at p. 946; *People v. Mills* (2010) 48 Cal.4th 158, 170 ["A party must make a timely and specific objection to the manner in which a trial court conducts jury selection or the matter is forfeited for appeal"].) In *Jaime,* as here, the defense objected to the prosecutor's exercise of a peremptory challenge under *Batson/Wheeler* without mentioning section 231.7 and did not correct the trial court's error in applying *Batson/Wheeler* to determine the issue. (*Jaime,* at p. 946.) The *Jaime* court concluded, however, that the trial court would have overruled a specific section 231.7 objection if the defense had raised one, because the record showed that the trial court continued to analyze the issue under *Batson/Wheeler* even after the prosecutor informed the court that the law had changed, and her prior argument was based on " 'the previous standard of law.' " (*Ibid.*) *Jaime* therefore applied the futility exception to the forfeiture rule. (*Id.* at pp. 946-947.) Defendant does not argue any basis for finding a specific section 231.7 objection would have been futile in the present case.

Defendant maintains that in the present case, unlike *Jaime,* "it is apparent the trial court and the parties understood the motion was required to be considered in light of the new statutory requirements set forth in section 231.7." Neither section 231.7 nor the statutory language describing the standards to be applied were mentioned by the parties or the trial court. In defendant's view, the court's and parties' awareness of the statute's application is demonstrated by the fact that neither the court nor the prosecutor discussed whether defense counsel had established a prima facie

9

case. A prima facie case is the first step required under *Batson/Wheeler* analysis and is not required under section 231.7. (§ 231.7, subd. (c).) But the absence of reference to whether the defense had made a prima facie case does not necessarily indicate anyone was aware of or applying section 231.7, as courts analyzing a *Batson/Wheeler* issue sometimes skip to analysis of the third stage—evaluating the prosecutor's reasons—where the prosecutor offers reasons for the challenges. (See *People v. Riccardi, supra,* 54 Cal.4th at pp. 786-787; *People v. Lenix* (2008) 44 Cal.4th 602, 610-611, 613, fn. 8.) Defendant's reliance on defense counsel's statement that she did not think the prosecutor's reasons were sufficient "as far as the law requires" is similarly not dispositive: Counsel did not suggest her reference to "the law" was to section 231.7 rather than the law established under *Batson/Wheeler*. Given the absence of any reference to section 231.7 or its language, we find no basis for defendant's assertion that the court and parties knew the new statute governed the proceeding.[4]

Defendant argues he could not forfeit his claim that the trial court erred in denying his objection in light of the requirements of section 231.7 because, as of January 1, 2022, as a matter of law, trial courts are required to assess an objection to a peremptory challenge under section 231.7. The conclusion of defendant's argument does not follow from its premise: We agree that the trial court was required to apply section 231.7 in this case (§ 231.7, subd. (i)), but this does not excuse defendant from his failure to object to the trial court's error. Defendant did not mention the existence of section 231.7, let alone argue the prosecutor's reasons were invalid under

---

[4] Section 231.7 became effective over a year before this trial began in March 2022 (Stats. 2020, ch. 318, eff. Jan. 1, 2021) but did not apply to jury trials in which jury selection began before January 1, 2022. (§ 231.7, subd. (i).) There is no question that it should have been applied in this case.

specific statutory provisions or object to the court applying an incorrect standard to determine the validity of those reasons.

Defendant ignores the fact that "the purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Jaime, supra,* 91 Cal.App.5th at p. 946.) The rationale for application of the rule is evident here. The errors defendant now asserts could have been avoided or corrected if he had brought them to the trial court's attention and involve factual issues requiring resolution in the trial court.

Defendant's primary argument illustrates the point. The prosecutor stated that she challenged J.D. because of his response to the Golden Gate Bridge hypothetical. Defendant argues this response was presumptively invalid under section 231.7, subdivision (e)(13), and not rebutted by clear and convincing evidence. Section 231.7, subdivision (e)(13), makes presumptively invalid "[a]ny justification that is similarly applicable to a questioned prospective juror or jurors, who are not members of the same cognizable group as the challenged prospective juror, but were not the subject of a peremptory challenge by that party."

The prosecutor told the court that J.D. said "no" when asked if he could identify the Golden Gate Bridge, which was of concern because of the need for jurors to identify the defendant in surveillance video footage. Defendant argues the prosecutor was factually incorrect—J.D. in fact responded "yes"—and her reason triggered section 231.7, subdivision (e)(13), because the prosecutor continued to question J.D. on this point but asked no additional questions of two non-Hispanic jurors who also answered "yes" to the hypothetical and were seated on the jury.

11

Defense counsel neither pointed out the prosecutor's mistake in stating that J.D. said "no" nor suggested that the prosecutor questioned J.D. differently from non-Hispanic jurors. Even assuming the trial court was aware that it needed to analyze defendant's objection to the peremptory challenge under section 231.7, the applicability of subdivision (e)(13) to the facts was not so obvious that the trial court could be expected to recognize it absent any input from the defense. First, if the defense had corrected the prosecutor's assertion that J.D. answered "no," the essential predicate to application of this subdivision would have been that J.D., like the other jurors, answered "yes" to the question whether he could identify the Golden Gate Bridge. Based on the prosecutor's (erroneous) representation that J.D. said "no," the court did not have reason to address this question. Moreover, if, as the People suggest, something about J.D.'s response gave reason to question the reliability of his initial "yes," and if the trial court had credited that assertion,[5] the trial court might have concluded J.D.'s response was not the same as those of the two jurors who unequivocally said "yes" to the

---

[5] The People, in the context of an argument pertaining to *Batson/Wheeler* analysis, maintain that the prosecutor would not have asked the follow-up questions she asked J.D. unless the prosecutor "perceived the juror's response as indicating his doubtfulness," and that J.D.'s "logically unresponsive" reply "confirmed [the prosecutor's] suspicion." An assumption does not substitute for clear and convincing evidence, and we cannot determine from the transcript whether the assumption is justified by the underlying facts, but the trial court could have evaluated the situation if defense counsel had pointed out that the prosecutor was mistaken about J.D.'s response and that questioning him differently from the other jurors implicated section 231.7, subdivision (e)(13).

We do not address the People's arguments that the trial court's decision was proper under *Batson/Wheeler* because defendant has not claimed otherwise and has challenged the decision solely on the basis that the trial court failed to apply section 231.7.

hypothetical. And even if the court concluded that J.D. initially said "yes," it still would have needed to determine whether the prosecutor was able to rebut the presumption of invalidity with clear and convincing evidence that "an objectively reasonable person would view the rationale as unrelated to" J.D.'s race or ethnicity (§ 231.7, subd. (e))—i.e., that the prosecutor's challenge was solely due to concerns about J.D.'s comfort making the sort of identification required in this case. In short, had defense counsel alerted the court to the prosecutor's factual mistake and raised the section 231.7, subdivision (e)(13) issue, the trial court could have made the necessary factual determinations.

Defendant's arguments regarding section 231.7, subdivisions (e)(7) and (g)(1)(C), address reasons that might be inferred from the colloquy between the prosecutor and J.D.—the former if the prosecutor's questioning is seen as indicating concern with J.D.'s English language abilities and the latter if J.D. is seen as giving confusing answers. Because they were not in fact offered by the prosecutor as reasons for challenging J.D., these provisions would not be relevant to our review of the trial court's decision: Section 231.7 requires the trial court to "consider only the reasons actually given" and "not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge" (§ 231.7, subd. (d)(1)), and we too are required to "consider only reasons actually given" and "not speculate as to or consider reasons that were not given to explain" the use of the peremptory challenge (§ 231.7, subd. (j).) In any event, these subdivisions of section 231.7 further illustrate the role of the forfeiture rule in this context, as they depend on

factual determinations the trial court could have made if alerted to their potential applicability.[6]

## DISPOSITION

The judgment is affirmed.

---

[6] Section 231.7, subdivision (e)(7), makes "[n]ot being a native English speaker" a presumptively invalid reason for a peremptory challenge. Defendant suggests that the prosecutor's questions to J.D. "appeared to be more directed at his English language abilities" and argues that the fact English was not J.D.'s native language "would not have been a valid basis for a peremptory challenge." Concern with a prospective juror's English language abilities is not necessarily discrimination against a non-native English speaker; a prosecutor's "concern for a juror's ability to understand" may be a proper basis for a peremptory challenge. (*People v. Ortiz, supra,* 96 Cal.App.5th at p. 805 [under pre-section 231.7 precedent, prosecutor's " 'concern for a juror's ability to understand' " is proper basis for challenge if supported by record].) Had the issue been raised, the trial court would have had to make the factual determinations necessary to decide whether section 231, subdivision (e)(7), applied and, if so, whether the prosecutor rebutted the presumption of invalidity with clear and convincing evidence, for example, that despite J.D.'s assertions to the contrary, the prospective juror did not sufficiently understand English.

Section 231.7, subdivision (g)(1)(C), provides that one of the reasons for peremptory challenges that has "historically been associated with improper discrimination" is that "[t]he prospective juror provided unintelligent or confused answers." This reason is presumptively invalid "unless the trial court is able to confirm that the asserted behavior occurred, based on the court's own observations or the observations of counsel for the objecting party." (§ 231.7, subd. (g)(2).) Had the issue been raised, the trial court's observations would have determined whether any presumption of invalidity applied.

14

_____

STEWART, P. J.


We concur.


_____

MILLER, J.


_____

MAYFIELD, J.*


*People v. Cardenas-Jacobo* (A165644)

_____

\* Judge of the Mendocino Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.